UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

BLOCKCHANGE VENTURES I GP, LLC,                         :   Case No. 21-cv-891 (PAE)
                                                        :
                        *Plaintiff,*                    :
                                                        :   Related Case No. 20-cv-6866 (AKH)
            v.                                          :
                                                        :
BLOCKCHANGE, INC.,                                      :
                                                        :
                        *Defendant.*                    :

------------------------------------------------------------- x

---

MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS THE COMPLAINT WITH PREJUDICE
PURSUANT TO FED. R. CIV. P. 12(b) OR STAY THE ACTION

---

MARK BRADFORD, P.C.
Mark Bradford
299 12th Street
Brooklyn, NY 11215
(347) 413-3287

*Attorney for Defendant*
*Blockchange, Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... iii

FACTUAL SUMMARY ....................................................................................................... 3

ARGUMENT ......................................................................................................................... 4

**I.** PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED YET AGAIN FOR LACK OF PERSONAL JURISDICTION UNDER FED. R. CIV. P. 12(b)(2). ................................. 4

**II.** PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED YET AGAIN FOR IMPROPER VENUE UNDER FED. R. CIV. P. 12(b)(3). ............................................... 8

**III.** THE NEW COMPLAINT SHOULD BE DISMISSED UNDER FED. R. CIV. P. 12(b)(6) FOR FAILING TO STATE ANY CLAIM UPON WHICH RELIEF MAY BE GRANTED. ...................................................................................................................... 8

    **A.** The New Complaint Fails to State Any Claim for Trademark Infringement or Unfair Competition (Counts I, III, IV, and V) .................................................................. 10

    **B.** The New Complaint Fails to State a Claim for Either Federal or State Trademark Dilution (Counts II and VII) .................................................................................... 11

    **C.** The New Complaint Fails to State a Claim for Deceptive Acts and Practices Under New York General Business Law Sections 349 and 350 (Count VI) ...................... 12

**IV.** ALTERNATIVELY, IF THE COURT WERE TO FIND THE NEW COMPLAINT SUFFICIENT UNDER FED. R. CIV. P. 12(b), IT SHOULD STAY THIS ACTION PENDING RESOLUTION OF THE CANCELLATION ACTION CURRENTLY BEFORE THE TTAB. ............................................................................................... 13

CONCLUSION ................................................................................................................... 16

# TABLE OF AUTHORITIES

## CASES

*A.V.E.L.A., Inc. v. Estate of Marilyn Monroe, LLC*,
  131 F. Supp. 3d 196 (S.D.N.Y. 2015) ........................................................... 10, 13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................... 9

*Capitol Records, LLC v. VideoEgg, Inc.*,
  611 F. Supp. 2d 349 (S.D.N.Y. 2009) ......................................................... 6

*Citigroup Inc. v. City Holding Co.*,
  97 F. Supp. 2d 549 (S.D.N.Y. 2000) ........................................................... 6

*Conley v. Gibson*,
  355 U.S. 41 (1957) ...................................................................................... 9

*CutCo Indus. v. Naughton*,
  806 F.2d 361 (2d Cir. 1986) ..................................................................... 5, 7

*Deere & Co. v. MTD Prods.*, Inc.,
  41 F.3d 39 (2d Cir. 1994) ............................................................................ 12

*Detroit Coffee Co. v. Soup For You*, No. 16-CV-9875 (JPO),
  2018 U.S. Dist. LEXIS 26170 (S.D.N.Y. Feb. 16, 2018) ............................. 6

*DiStefano v. Carozzi N. Am., Inc.*,
  286 F.3d 81 (2d Cir. 2001) .......................................................................... 4

*Dow Jones & Company, Inc. v. International Securities Exchange, Inc.*,
  451 F.3d 295 (2d Cir. 2006) ........................................................................ 9

*Goshen v. Mut. Life Ins. Co. of N.Y.*,
  98 N.Y.2d 314 (2002) ................................................................................ 12

*Goya Foods v. Tropicana Prods.*,
  846 F.2d 848 (2d Cir. 1988) ....................................................................... 15

*Gulf Ins. Co. v. Glasbrenner*,
  417 F.3d 353 (2d Cir. 2005) ......................................................................... 8

*Hayden v. County of Nassau*,
  180 F.3d 42 (2d Cir. 1999) .......................................................................... 7

*Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*,
  763 F.2d 55 (2d Cir. 1985) .......................................................................... 7

*In re Rationis Enters., Inc. of Panama*,
    261 F.3d 264 (2d Cir. 2001) ................................................................ 4

*Johnson & Johnson Consumer Cos., Inc. v. Aini*,
    540 F. Supp. 2d 374 (E.D.N.Y. 2008) ............................................... 12

*Juicy Couture v. Bella Intern. Ltd.*,
    930 F. Supp. 2d 489 (S.D.N.Y. 2013) ............................................... 10

*Kaplan, Inc. v. Yun*,
    16 F. Supp. 3d 341 (S.D.N.Y. 2014) ................................................. 13

*Landis v. N Am. Co.*,
    299 U.S. 248 (1936) ........................................................................... 14

*Lorillard Tobacco Co. v. Jamelis Grocery, Inc.*,
    378 F. Supp. 2d 448 (S.D.N.Y. 2005) ............................................... 10

*Lyons P'Ship, L.P. v. D & L Amusement & Entm't, Inc.*,
    702 F. Supp. 2d 104 (E.D.N.Y. 2010) ............................................... 12

*Polaroid Corp. v. Polarad Elecs. Corp.*,
    287 F.2d 492 (2d Cir. 1961) .............................................................. 10

*Rhoades v. Avon Prod., Inc.*,
    504 F.3d 1151 (9th Cir. 2007) ........................................................... 15

*Royalty Network v. Dishant.com*,
    638 F. Supp. 2d 410 (S.D.N.Y. 2009) ................................................. 6

*Savin Corp. v. Savin Group*,
    391 F.3d 439 (2d Cir. 2004) .............................................................. 11

*Smith v. Bayer Corp.*,
    131 S. Ct. 2368 (2011) ...................................................................... 14

*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*,
    588 F.3d 97 (2d Cir. 2009) ................................................................ 11

*TCPIP Holding Co. v. Haar Comm'ns.*,
    244 F.3d 88 (2d Cir. 2001) ................................................................ 11

*Tigercat Int'l v. Caterpillar*, No. 16-cv-1047-GMS,
    2018 U.S. Dist. LEXIS 74191 (D. Del. May 2, 2018) ...................... 15

*U.S.E.P.A. ex rel. McKeown v. Port Auth. of N.Y. & N.J.*,
    162 F. Supp. 2d 173 (S.D.N.Y. 2001) ................................................. 8

*Van Praagh v. Gratton,*
  993 F. Supp. 2d 293 (E.D.N.Y. 2014) ................................................... 10

**STATUTES**

15 U.S.C. § 1125 ............................................................................................ 10

15 U.S.C. § 1125(c) ....................................................................................... 11

15 U.S.C. § 1125(c) ....................................................................................... 11

28 U.S.C. § 1391 ............................................................................................. 8

28 U.S.C. § 1391 ............................................................................................. 8

N.Y. GEN. BUS. L. § 349 ............................................................................... 12

N.Y. GEN. BUS. L. § 350 ............................................................................... 12

N.Y. GEN. BUS. L. § 360-l ............................................................................ 11

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b) ................................................................................. 2, 13

Fed. R. Civ. P. 12(b)(2) ............................................................................. 1, 7

Fed. R. Civ. P. 12(b)(3) ............................................................................. 1, 8

Fed. R. Civ. P. 12(b)(4) ................................................................................. 1

Fed. R. Civ. P. 12(b)(6) ................................................................. 1, 9, 12, 13

Defendant BLOCKCHANGE INC. ("**Defendant**"), by and through its undersigned counsel, respectfully offers this memorandum of law in support of its motion, pursuant to Fed. R. Civ. P. 12(b)(2), -(3), and -(6), for an order dismissing with prejudice the complaint in this action (the "**New Complaint**") filed by plaintiff, BLOCKCHANGE VENTURES I GP, LLC ("**Plaintiff**"), or, alternatively, staying this action pending resolution of the cancellation proceeding currently before the Trademark Trial and Appeal Board with respect to the validity of the very trademark at issue in this action (the "**TTAB Proceeding**").[1]

The New Complaint was filed a mere three days after Judge Hellerstein dismissed a largely identical complaint (the "**Prior Complaint**") in the "Related Case" above-referenced in the caption, for improper service of process, lack of jurisdiction, and improper venue under 12(b)(2), -(3), and -(4). (*See* Exhibit A.[2]) Plaintiff's latest foray into this Court has no apparent purpose except to obstruct and delay the TTAB Proceeding. The pretextual nature of Plaintiff's hastily-filed action is apparent from the procedural timeline:

- Aug. 25, 2020 – Plaintiff files Prior Complaint in Related Case, No. 1:20-cv-06866-AKH (S.D.N.Y.), alleging, *inter alia*, infringement and dilution of its trademark by Defendant. (*See* Exhibit B.)

- Sep. 21, 2020 – Defendant answers Prior Complaint with Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(2), -(3), -(4), and -(6).

- Sep. 22, 2020 – One day after filing its Motion to Dismiss, Defendant commences TTAB Proceeding seeking cancellation of Plaintiff's trademark.

---

[1] *Blockchange, Inc. v. Blockchange Ventures I, LLC*, Cancellation No. 92075295 (T.T.A.B.).

[2] All cited Exhibits are annexed to the accompanying Declaration of Mark Bradford ("**Bradford Decl.**"). Annexed as Exhibit A to the Bradford Decl. is a true and correct copy of the Order Granting Motion To Dismiss issued by Judge Alvin K. Hellerstein, U.S.D.J., dated January 29, 2021, in the action captioned, *Blockchange Ventures I GP, LLC v. Blockchange, Inc.*, Case No. 20-cv-06866 (AKH) (the "**Related Case**"). The Related Case is referenced as such on the Civil Cover Sheet [Docket No. 2].

- <u>Oct. 20, 2020</u> – With Defendant's Motion to Dismiss fully briefed, the Court schedules oral argument for Feb. 5, 2021.

- <u>Dec. 1, 2020</u> – TTAB stays the cancellation proceeding before it in favor of the litigation pending in S.D.N.Y., while Defendant's Motion to Dismiss the Prior Complaint is still *sub judice*.

- <u>Jan. 29, 2021</u> – Judge Hellerstein issues Order and Judgment granting Defendant's Motion to Dismiss the Prior Complaint pursuant to Fed. R. Civ. P. 12(b)(2), -(3), and -(4), declining to reach the motion with respect to Rule 12(b)(6), and cancelling the oral argument scheduled for Feb. 5.

  On the same day, Defendant files a motion to resume the stayed TTAB proceeding.

- <u>Feb. 1, 2021</u> – Plaintiff files the New Complaint, three days after dismissal of the Prior Complaint.

- <u>Feb. 9, 2021</u> – Plaintiff files a motion to suspend the TTAB Proceeding without answering Defendant's motion to resume it.

The New Complaint differs from the Prior Complaint only in the addition of factual allegations pertaining to its ill-starred argument that this Court has jurisdiction over Defendant.[3] However, Plaintiff raised almost all of these "new" jurisdictional allegations in its opposition to Defendant's Motion To Dismiss and Judge Hellerstein dispensed with them in his Order. What very little in the New Complaint that was not before Judge Hellerstein will not avail Plaintiff here. The New Complaint is so poorly pleaded that even if this Court found that its minimally emended allegations passed muster under Rule 12(b), it would still present one of the very rare

---

[3] The added matter in the New Complaint ("**New Compl.**") is contained in paragraphs 9 through 27. The 72 paragraphs comprising paragraphs 1 through 8 and 28 through 92 of the New Complaint correspond exactly to paragraphs 1 through 72 of the Prior Complaint ("**Prior Compl.**", annexed as Exhibit B to the Bradford Decl.). Citations to paragraphs numbered identically in both complaints are referenced herein as "**Both Compls.**"

occasions on which a stay of this action pending resolution of the TTAB Proceeding would be the most efficacious course.

## FACTUAL SUMMARY

As identically alleged in both complaints, Plaintiff is a limited liability company based in New York, New York. (Both Compls. ¶ 5.) Plaintiff is the owner of USPTO Registration No. 5,676,113 for the word mark "Blockchange," with the stated use class of "Providing venture capital, development capital, private equity and investment funding," and the date of the mark's "first use in commerce" given as "8-31-2017." (Both Compls. ¶ 6 & Ex. 1).

Defendant is a corporation registered in the State of California as of September 26, 2017.[4] Defendant is in the business of providing real-time, integrated business management intelligence by combining information from various databases in an easy-to-understand user interface. (Ex. C, ¶ 3.) Defendant's customers are entities typically regulated by the SEC that require a software solution to facilitate their management of digital assets. (Id.) Defendant's servers and the server infrastructure used to process, store, transmit these communication and data are all located in California. (Id. ¶ 4.) Defendant maintains its registered address and principal place of business in the State of California; it does not have an address in New York, does not maintain any bank account in New York, does not own any real or personal property in New York, does not have any agents or employees in New York, does not buy or sell any assets in New York, is not the owner or officer of any business in New York, is not the controlling shareholder of any

---

[4] *See* Exhibit C, ¶ 2 (Decl. of Caroline Eyre, executed Sept. 21, 2020, submitted with Defendant's Motion To Dismiss in the Related Case).

corporation registered in New York, and has never instituted any legal action in New York. (Id. ¶¶ 2, 5.)

Plaintiff has brought both of its action in this Court claiming that Defendant's use of "Blockchange" in its name constitutes trademark infringement, trademark dilution, and unfair competition under federal, state, and common law. Insofar as Plaintiff alleges absolutely no instance of actual confusion resulting from Defendant's use of that name, Plaintiff instead goes to great lengths to make the parties appear as confusingly similar as possible. In the New Complaint, Plaintiff describes itself as "provid[ing] venture capital, development capital, private equity, and investment funding *exclusively in the field of digital assets*," (New Compl. ¶ 5), and three paragraphs later describes Defendant as "provid[ing] investment services *exclusively in the field of digital assets*." (Id. ¶ 8 (emphases added).) More simply put, however, Plaintiff is – or claims to be – an *investor*, while Defendant provides a *tool*: a cloud-based SaaS ("Software as a Service") apparatus for SEC-regulated registered investment advisors. (*See* Ex. C, ¶ 3.)

As in the Related Action, Plaintiff's pleadings are too defective to stand. For the reasons that follow, this Court should dismiss the New Complaint in its entirety – and, this time, with prejudice – or stay the action in favor of the TTAB Proceeding.

## ARGUMENT

## I. PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED YET AGAIN FOR LACK OF PERSONAL JURISDICTION UNDER FED. R. CIV. P. 12(b)(2).

The Court cannot reach the merits of a plaintiff's claims unless or until it has personal jurisdiction over the defendant. See, e.g., *In re Rationis Enters., Inc. of Panama*, 261 F.3d 264, 267-68 (2d Cir. 2001). "[T]he plaintiff need only make a *prima facie* showing that the court possesses personal jurisdiction over the defendant." *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001).

Plaintiff alleges that this Court has "specific" jurisdiction under CPLR 302(a)(1). (New Compl. ¶ 3.) New York's long-arm statute, CPLR § 302(a)(1), provides that "a court may exercise jurisdiction over any non-domiciliary . . . , who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state . . . ." The court may have jurisdiction over a nondomiciliary under CPLR 302(a)(1) "if two conditions are met: first, the nondomiciliary must 'transact business' within the state; second, the claim against the nondomiciliary must arise out of that business activity. A nondomiciliary 'transacts business' under CPLR 302(a)(1) when he 'purposefully avails [himself] of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws.'" *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986). Even if the defendant is not "doing business" for purposes of CPLR 301, "[i]f the defendant has 'transacted business' in New York, it is suable on any cause of action that arises out of the transaction. CPLR § 302(a)(1)." *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 58 (2d Cir. 1985).

If the long-arm statute permitted personal jurisdiction, the second step would be to analyze whether personal jurisdiction comports with the Due Process Clause, but in this case, the analysis cannot progress beyond 302(a)(1), itself. As in the Prior Complaint, nowhere in the New Complaint does Plaintiff allege any business transaction occurring in this forum sufficient to allow specific jurisdiction over Defendant under CPLR 302(a)(1).

In paragraphs 11 through 20 of the New Complaint, Plaintiff expends a great deal of verbiage attempting to portray the mere availability of Defendant's website to New York residents – with its "interactive" information menus – as tantamount to doing business in this jurisdiction. As Plaintiff well knows, and as Judge Hellerstein made clear in his Order, that is simply not the law. "Because websites are 'generally speaking, equally accessible everywhere,

the mere availability of the site to users in New York, standing alone, does not amount to transacting business in the state for purposes of section 302(a).'" *Royalty Network v. Dishant.com*, 638 F. Supp. 2d 410, 418 (S.D.N.Y. 2009) (quoting *Capitol Records, LLC v. VideoEgg, Inc.*, 611 F. Supp. 2d 349, 358 (S.D.N.Y. 2009)); (*see also* Hellerstein Order (Ex. A) at 3). Moreover, "in the case of web sites displaying [allegedly] infringing marks the tort is deemed to be committed where the web site is created and/or maintained." *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 567 (S.D.N.Y. 2000). In this case, the alleged tortious action did not take place in New York, as the Defendant's website was not maintained or created in the state of New York.

Plaintiff also alleges personal jurisdiction over Defendant through the latter's connections with two New York entities: Gemini Trust Company, LLC ("**Gemini**") and Vimeo, Inc. ("**Vimeo**"). The latter "connection" with Vimeo is alleged only in passing in paragraph 27 of the New Complaint, to the effect that Vimeo's hosting of Defendant's website constitutes "being engaged in business" with the New York entity. Web hosting without more is insufficient to accord jurisdiction to the foreign entity whose website is hosted, and this allegation obviously fails. *See Detroit Coffee Co. v. Soup For You*, No. 16-CV-9875 (JPO), 2018 U.S. Dist. LEXIS 26170 at *8-9 (S.D.N.Y. Feb. 16, 2018) ("[I]n a networked world of online storefronts, hosting an online marketplace is more of an all-or-nothing proposition, and a website alone does not automatically demonstrate product targeting to every judicial venue.")

Plaintiff unsuccessfully raised Defendant's connection with Gemini in opposing Defendant's Motion To Dismiss (*see* Hellerstein Order (Ex. A) at 2-3 ("[E]ven if such a partnership existed, Plaintiff has not shown that its causes of action arise out of the partnership.")). In paragraphs 21 through 26 of the New Complaint, Plaintiff alleges – essentially only rewording

its prior allegations – that Defendant "is engaged in business with" Gemini, as, *inter alia,* "a third party vendor that collects and shares information about visitors to the site with Defendant and third-party entities in connection with the infringing 'Blockchange' name" (New Compl. ¶ 21), and that Defendant allegedly "identifies Gemini as a subprocessor to provide infrastructure services in connection with the infringing 'Blockchange' name." (New Compl. ¶ 22.)

In fact, Defendant is, in essence, one of Gemini's *customers.* In order to service one of Defendant's own clients, Quantum Capital Management, a registered investment advisor ("RIA") located in San Francisco, Defendant implemented an application programming interface ("API") between Defendant's SaaS product and Gemini's systems: a common practice in order for one system to communicate with another.[5] There is no partnership or agency relationship between Defendant and Gemini – nor even a contract – such that Defendant's dealings with Gemini could constitute a "purposeful[ availment] of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws." *CutCo Indus.,* 806 F.2d at 365. Plaintiff fails – again – to show how any of its causes of action arise out of this "transaction." *See Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 58 (2d Cir. 1985).

Accordingly, the Complaint should be dismissed for failure to properly plead personal jurisdiction over Defendant under Fed. R. Civ. P. 12(b)(2). Moreover, as this is for all practical purposes Plaintiff's *second* failed attempt to take a bite of the same apple, this Court should dismiss with prejudice and grant no leave to replead. *See Hayden v. County of Nassau*, 180 F.3d 42, 53-54 (2d Cir. 1999) ("[W]here the plaintiff is unable to show that he would be able to

---

[5] *See* Exhibit D, ¶ 5 (Reply Declaration of Daniel Eyre, executed October 6, 2020, submitted with Defendant's Reply Memorandum on its Motion To Dismiss in the Related Case).

amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied.").

## II. PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED YET AGAIN FOR IMPROPER VENUE UNDER FED. R. CIV. P. 12(b)(3).

"[T]he burden of showing that venue in the forum district is proper falls on the plaintiff." *U.S.E.P.A. ex rel. McKeown v. Port Auth. of N.Y. & N.J.,* 162 F. Supp. 2d 173, 183 (S.D.N.Y. 2001). On a motion to dismiss for improper venue under Fed. R. Civ. P. 12(b)(3), a court applies the same standard of review that it applies to a motion to dismiss for lack of personal jurisdiction. *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005) (*quoting* 28 U.S.C. § 1391). As with personal jurisdiction, venue is improper under 28 U.S.C. § 1391 because (a) Defendant – a company with all of its significant contacts in California – does not reside in, do any business in, and "may not be found" in New York State, and (b) Plaintiff nowhere sufficiently pleads any events giving rise to the Plaintiff's claims occurring in New York State.

Accordingly, Plaintiff's pleading of venue fails as does its pleading of jurisdiction, and the Court should dismiss the Complaint for improper venue under Fed. R. Civ. P. 12(b)(3).

## III. THE NEW COMPLAINT SHOULD BE DISMISSED UNDER FED. R. CIV. P. 12(b)(6) FOR FAILING TO STATE ANY CLAIM UPON WHICH RELIEF MAY BE GRANTED.

The allegations with respect to Defendant's alleged malfeasance and the causes of action allegedly arising therefrom are identical in both Complaints: entirely conclusory and/or mere recitations of the elements of the causes of action. Paragraph 36 of the New Complaint simultaneously summarizes Plaintiff's claims while exemplifying the Complaint's fatal vagueness: "By offering for sale and selling its services, Defendant is likely to cause, and has caused, consumer confusion, and has infringed and diluted the Blockchange mark." (*See also* Prior Complaint ¶ 16, containing identical language.) Plaintiff's allegations contain no example

of the actual confusion Defendant's mark allegedly "has caused" already, nor even any facts to support Plaintiff's assertion that the mark is "likely to cause" confusion – it merely asserts, without more, that these things are self-evidently so. This will not suffice.

"[A] plaintiff's obligation to provide the 'grounds' of [its] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964-65 (2007). A complaint will not suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 127 S. Ct. at 1966); *see Dow Jones & Company, Inc. v. International Securities Exchange, Inc.*, 451 F.3d 295, 307 (2d Cir. 2006) (a trademark claim "fails under even the liberal standard of Rule 12(b)(6)" when a complaint "consists of conclusory allegations unsupported by factual assertions"). While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. This precludes that "a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." *Twombly*, 127 S. Ct. at 1968 (quoting and distinguishing *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)). In brief, it is necessary for a complaint to "nudge[ the plaintiff's] claims across the line from conceivable to plausible." *Twombly*, 127 S. Ct. at 1974.

Accordingly, Plaintiff has failed to adequately plead every single cause of action in the Complaint, as shown below:

**A.** **The New Complaint Fails to State Any Claim for Trademark Infringement or Unfair Competition (Counts I, III, IV, and V)**

To state a claim for trademark infringement under the Lanham Act (Count I), Plaintiff must allege (1) "that it has a valid mark entitled to protection,"[6] and (2) "that the defendant's use of that mark is likely to cause confusion." *Juicy Couture v. Bella Intern. Ltd.*, 930 F. Supp. 2d 489, 498 (S.D.N.Y. 2013). Plaintiff alleges the same facts in support of its causes of action for unfair competition under the Lanham Act (Count III), *see Van Praagh v. Gratton*, 993 F. Supp. 2d 293, 300 (E.D.N.Y. 2014) ("substantially similar" standards as claims for Federal trademark infringement); common law trademark infringement (Count IV), *see A.V.E.L.A., Inc. v. Estate of Marilyn Monroe, LLC*, 131 F. Supp. 3d 196, 209 (S.D.N.Y. 2015) (elements "mirror those for the Lanham Act"); and common law unfair competition (Count V). *See Lorillard Tobacco Co. v. Jamelis Grocery, Inc.*, 378 F. Supp. 2d 448, 456 (S.D.N.Y. 2005) (elements "mirror the Lanham Act claims").

The most glaring defect in the pleading of all four of these causes of action is that Plaintiff cannot allege likely or actual confusion except in the most conclusory fashion – "is likely to cause" and "has caused" (*See*, e.g., New Compl. ¶¶ 31, 35, 36, 44, 46) – and Plaintiff alleges absolutely no specific instances of actual confusion. *See Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961).

Accordingly, Plaintiff has failed to adequately plead federal trademark infringement under 15 U.S.C. § 1125(a).

---

[6] It should be reiterated that the validity of Plaintiff's mark is the subject of the pending TTAB Proceeding.

**B.     The New Complaint Fails to State a Claim for Either Federal or State Trademark Dilution (Counts II and VII)**

Federal trademark law permits the owner of a "famous mark that is distinctive" to enjoin a person from using a "mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark." 15 U.S.C. § 1125(c). To sustain a claim under the Federal Trade Dilution Act ("FTDA") under 15 U.S.C. § 1125(c), Plaintiff must ultimately show that its mark has a "'significant degree of inherent distinctiveness'" and that it is "truly famous," possessing "'a high degree of... acquired distinctiveness.'" *Savin Corp. v. Savin Group*, 391 F.3d 439, 449 (2d Cir. 2004) (quoting *TCPIP Holding Co. v. Haar Comm'ns.*, 244 F.3d 88, 97, 98 (2d Cir. 2001)). Plaintiff has made only conclusory allegations that its mark is "distinctive and famous," but even if the New Complaint offered more in this regard it would not avail Plaintiff. "The degree of fame required for protection under the FTDA must exist in the general marketplace, not in a niche market. Thus, fame limited to a particular channel of trade, segment of industry or service, or geographic region is not sufficient to meet that standard." *Id.* at 450, n.6. Examples of famous marks include Dupont, Buick, and Kodak. *TCPIP Holding Co.*, 244 F.3d at 99. Plaintiff fails to plead any evidence to indicate that the "Blockchange" mark is "truly famous." Accordingly, the Complaint fails to state a claim for federal trademark dilution.

Section 360-l of New York's General Business Law recognizes similar claims, except that the state law does not require the mark in question to be "famous," provided that it is "distinctive." *See Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 114 (2d Cir. 2009). The statute provides a plaintiff with injunctive relief in cases where there is a "[l]ikelihood . . . of dilution of the distinctive quality of a mark or trade name." N.Y. Gen. Bus. Law § 360-l. The Second Circuit has defined dilution "as either the blurring of a mark's product identification or the tarnishment of the affirmative associations a mark has come to convey."

*Deere & Co. v. MTD Prods.*, Inc., 41 F.3d 39, 42-43 (2d Cir. 1994) (internal quotation marks omitted). "Thus, in order to prevail on a claim under section 360-l, a plaintiff must prove that (1) its mark possesses a 'distinctive quality capable of dilution[,]' and (2) there is a likelihood of such dilution." *Lyons P'Ship, L.P. v. D & L Amusement & Entm't, Inc.*, 702 F. Supp. 2d 104, 116 (E.D.N.Y. 2010) (quoting *Johnson & Johnson Consumer Cos., Inc. v. Aini*, 540 F. Supp. 2d 374, 394 (E.D.N.Y. 2008)). "Distinctiveness, in this context, is measured by 'the strength of a mark for infringement purposes.'" *Id.*, 702 F. Supp. 2d at 116 (quoting *Johnson & Johnson Consumer Cos., Inc.*, 540 F. Supp. 2d at 394). As discussed above, Plaintiff has not adequately pleaded the distinctiveness of its mark with respect to any of the causes of action in the Complaint, nor has it adequately alleged the consumer confusion that might give rise to dilution.

C.    **The New Complaint Fails to State a Claim for Deceptive Acts and Practices Under New York General Business Law Sections 349 and 350 (Count VI).**

Defendant also moves to dismiss the state law claims under Counts VII under Rule 12(b)(6). In Count VI, Plaintiff alleges a violation of N.Y. GEN. BUS. L. § 349 (deceptive acts and practices) and § 350 (false advertising). In order to withstand a motion to dismiss, Plaintiff must show "[d]eceptive acts or practices" or "false advertising," occurred "in the conduct of any business, trade or commerce or in the furnishing of any services in this state." GBL §§ 349, 350 (emphasis added). In *Goshen v. Mut. Life Ins. Co. of N.Y.*, the Court of Appeals held that the statute was intended to address commercial misconduct taking place in New York. 98 N.Y.2d 314, 324-25 (2002). Plaintiff's only allegation in this regard is the conclusory statement that "[t]hrough the sale, offer for sale, distribution and advertising of its infringing services, Defendant has engaged in consumer-oriented conduct that has affected the public interest of New York and has resulted in injury to consumers in New York." (New Compl. ¶ 79.) Plaintiff cites not one instance of this actually happening: neither of anyone in this jurisdiction being deceived

nor anyone being misled by "advertising" of any kind. Accordingly, this cause of action also fails.

Moreover, Plaintiff makes absolutely no effort to differentiate its allegations with respect to the state claim for deceptive acts and practices from its allegations supporting the causes of action for trademark infringement. (*Compare* New Compl. ¶¶ 35-37, with ¶¶ 79-80.) As the alleged "deceptive acts or practices . . . are precisely the acts that constitute the alleged trademark infringement," this claim fails as a matter of law. *A.V.E.L.A.*, 131 F. Supp. 3d at 217 (quoting *Kaplan, Inc. v. Yun*, 16 F. Supp. 3d 341, 352-53 (S.D.N.Y. 2014)).

Plaintiff's wholly insufficient efforts to support the sufficiency of its pleading of every cause of action in the Complaint again demonstrates that this Court should dismiss the Complaint in its entirety, pursuant to Fed. R. Civ. P. 12(b)(6).

IV.    **ALTERNATIVELY, IF THE COURT WERE TO FIND THE NEW COMPLAINT SUFFICIENT UNDER FED. R. CIV. P. 12(b), IT SHOULD STAY THIS ACTION PENDING RESOLUTION OF THE CANCELLATION ACTION CURRENTLY BEFORE THE TTAB.**

Certainly, given the defective pleadings in the New Complaint, the question may be largely academic, but in the event that this Court were to find that Plaintiff's action passed muster under Rule 12(b) – however narrowly – it would still serve the interests of judicial efficiency to stay this action pending adjudication of the pending TTAB Proceeding. In the latter, Defendant is challenging the validity of Plaintiff's registration of its "Blockchange" mark. In this action, Plaintiff claims, *inter alia*, Defendant's alleged infringement and/or dilution of this same mark. The validity of Plaintiff's registration is a key factual allegation going to the strength of its mark in this action, but it is not inconceivable that Plaintiff could suffer a negative adjudication

by the TTAB and still not be completely precluded from an action for infringement and/or dilution of that mark nonetheless. As such, the two actions do not squarely conflict with each other, but the TTAB's finding of fact could preclude redetermination of that issue in the district court litigation. *See B&B Hardware v. Hargis Indus.*, 135 S. Ct. 1293, 1306-07 (2015) (according preclusive effect to TTAB's determination regarding registration in district court action, "[I]t does not matter that registration and infringement are governed by different statutory provisions. Often a single standard is placed in different statutes; that does not foreclose issue preclusion." (citing *Smith v. Bayer Corp.*, 131 S. Ct. 2368, 2376 (2011)).

A decision to stay litigation lies within the sound discretion of the court and represents an exercise of the court's inherent power to conserve judicial resources by controlling its own docket in the interests of the efficient and fair resolution of disputed issues. The power to stay proceedings "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. N Am. Co.*, 299 U.S. 248, 254-55 (1936). The party seeking a stay must demonstrate "a clear case of hardship or inequity, if there is even a fair possibility that the stay would work damage on another party." *Landis*, 299 U.S. at 254-55. Thus, to determine whether to stay a litigation, the court should consider: (1) judicial efficiency as measured by the stage of the civil litigation and the stay's potential to simplify the issues; (2) harm or unfair prejudice to the non-moving party that will result from the grant of a stay; and (3) the hardship and inequity to the moving party if the stay is denied. *See id.*

With respect to judicial efficiency, it is beyond dispute that this litigation is in its early stages insofar as Plaintiff has yet to withstand a motion to dismiss. The question of which course would best simplify the issues is helpfully illuminated by *Tigercat Int'l v. Caterpillar*, No. 16-cv-1047-GMS, 2018 U.S. Dist. LEXIS 74191 (D. Del. May 2, 2018), in which the district court

declined to strictly apply the "primary jurisdiction" rule guiding the Second Circuit in *Goya Foods v. Tropicana Prods.*, 846 F.2d 848 (2d Cir. 1988), and instead "focus[ed] its attention on efficiency." *Tigercat*, 2018 U.S. Dist. LEXIS 74191 at *9 (citing *Rhoades v. Avon Prod., Inc.*, 504 F.3d 1151, 1165 (9th Cir. 2007) ("The deciding factor should be efficiency; the district court should exercise jurisdiction if this court is more efficient; otherwise, not.")). As discussed above, "a TTAB decision will aid the parties in narrowing their contentions and the court in rendering its decision on the issues of likelihood-of-confusion and dilution that are essential to [Plaintiff's claims] before the court." *Tigercat,* 2018 U.S. Dist. LEXIS 74191, at *10-11.

Insofar as the dispute has not progressed very far at all in either forum – in this Court, because of defective pleadings, and in the TTAB Proceeding, due to the early stay pending this Court's disposition of the Old Complaint in the Related Case – neither party can show prejudice as a result of a stay of this action. A stay would merely allow the TTAB to simplify certain key issues in the litigation, in the unlikely event that the litigation were to be deemed viable in this Court. Accordingly, Defendant respectfully requests that this Court exercise its discretion toward limiting any and all delays by the Plaintiff, whether by dismissal or a stay of this action.

**CONCLUSION**

For the foregoing reasons, and as argued in the moving memorandum, Defendant

respectfully requests that this Court issue an order dismissing the Complaint in its entirety, and

granting such other, further, and different relief as this Court may deem just and proper.

Dated: New York, New York
     February 25, 2020

                    MARK BRADFORD, P.C.

                      Mark Bradford
                  299 12th Street
                  Brooklyn, New York 11215-4903
                  Telephone: (347) 413-3287
                  Email: mb@markbradfordpc.com

                  *Attorney for Defendant*
                  *Blockchange Inc.*