**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

BLOCKCHANGE VENTURES I GP, LLC

**Plaintiff,**

v.

BLOCKCHANGE, INC.,

**Defendant.**

Case No. 21-cv-891

Honorable Paul A. Engelmayer
Magistrate Judge Ona T. Wang

**Plaintiff's Memorandum of Law in Opposition to Defendant's**
**Motion to Dismiss the Complaint or Stay the Case**

By: */s/ Blake Perkins*
Blake Perkins, Counsel
26 Broadway, 17th Floor
New York, NY 10014
212-797-1007 (Tel.)
212-563-9280 (Fax)
perkins@blake-perkins.com

Rania V. Sedhom
Sedhom Law Group, PLLC
445 Park Avenue, 9th Floor
New York, NY 10022
212-549-1819 (Tel.)
212-563-9280 (Fax)
rsedhom@bespokelawfirm.com

*Attorneys for Plaintiff Blockchange Ventures*
*I GP, LLC*

# Contents

Introduction ............................................................................................................. 1

    The Parties ......................................................................................................... 1

    Procedural Background ....................................................................................... 2

    Statement of Facts ............................................................................................. 3

Argument ............................................................................................................... 4

    Jurisdictional Standard ....................................................................................... 4

    Defendant transacts business in New York. ........................................................ 5

    Defendant is present in New York through the operation of its website ............. 6

    Defendant transacts business with New York Entities ........................................ 9

    Defendant engages in an integrated collaborative partnership with a New York entity .. 10

    Venue is proper in this judicial district ............................................................. 12

    Blockchange sufficiently alleged all its causes of action .................................... 13

    Blockchange sufficiently alleged its trademark infringement and unfair competition

        claims ......................................................................................................... 13

    Blockchange sufficiently alleged its trademark dilution claims.......................... 15

    Blockchange sufficiently alleged its claim for deceptive acts and practices under NY

        GBL §§ 349 and 350 .................................................................................. 17

    A stay of this case in deference to a TTAB proceeding is not appropriate....................... 18

Conclusion ........................................................................................................... 20

## Cases

*A.V.E.L.A. v Estate of Marilyn Monroe, LLC*, 131 F. Supp. 3d 196 (S.D.N.Y. 2015) ................. 17

*Citigroup v City Holding Co.*, 97 F. Supp. 2d 549 (S.D.N.Y. 2000) ..................................... passim

*Coach Servs., Inc. v Triumph Learning LLC*, 668 F.3d 1356 (Fed. Cir. 2012) ........................... 14

*Conley v. Gibson*, 355 U.S. 41 (1957) ................................................................... 13

*Courtenay Communications Corp. v. Hall*, 334 F. 3d 210 (2d Cir. 2003) ................................. 13

*Cuisinarts v Robot-Coupe Intern. Corp.*, 509 F. Supp. 1036 (S.D.N.Y. 1981) ........................... 15

*Dentsply Int'l Inc. v. Dental Brands for Less LLC*, No. 15-cv-8775(LGS), (S.D.N.Y. Jul. 25,
    2016) ............................................................................................... 18

*Deutsche Bank Sec., Inc. v Montana Bd. Of Invs.*, 7 N.Y. 3d 65 [2006], *cert. denied* 549 US __.. 5

*Dorchester Financial Securities v Banco BRJ*, 722 F. 3d 81 (2d Cir. 2013) ................................. 4

*Energy Brands v Spiritual Brands*, 574 F. Supp. 2d 458 (S.D.N.Y. 2008) ............................... 5, 9

*Gant v. Wallingford Bd. of Ed.*, 69 F.3d 669 (2d Cir. 1995) ............................................. 13

*Gibbons v Malone*, 703 F.3d 595 (2d Cir. 2013) ....................................................... 4

*Goat Fashion. v 1661*, 19 cv 11045 (PAE) (S.D.N.Y. Sep. 28, 2020) ..................................... 16

*Growblox Sciences v GCM Admin. Services*, 14 Civ. 2280 (ER) (S.D.N.Y., 31 March 2016)..... 12

*Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353 (2d Cir. 2005) ............................................. 12

*Hanlon v Melfi*, 423 N.Y.S. 2d 132,133, 102 Misc. 2d 170, 172-73 (2d Dept. 1979); *Eng*, 21 Cal.
    App. 5th at 692 n4, 230 Cal. Rptr. 3d at 786 n4 ......................................................11

*Indemnity Ins. Co. of North Amer. v K-Line Amer*, 06 Civ 0615 (BSJ), *consolidated with* 06 Civ.
    2557, 06 Civ. 2956, 06 Civ. 2962, 06 Civ. 3038, 06 Civ. 3040, 06 Civ. 3042 (S.D.N.Y. June 13,
    2007) ................................................................................................. 4

*Katiroll Co. v Kati Junction*, 33 F. Supp. 3d 359 (S.D.N.Y. 2014)...................................... 15

*Keiler v Harlequin Enterprises*, 751 F.3d 64 (2d Cir. 2014) ........................................ 4

*LVL XIII Brands v Louis Vuitton Malletier*, 209 F. Supp. 3d 612, 671 (S.D.N.Y. 2016).............. 15

*Maurizio v. Goldsmith*, 230 F. 3d 518 (2d Cir. 2000) .................................. 18

*Mohebbi v Khazan*, 50 F. Supp. 3d 1234 (ND Cal 2014) ..................................11

*On-line Careline Inc. v. Am. Online Inc.*, 229 F.3d 1080 (Fed. Cir. 2000) .................................. 14

*Other Telephone v Connecticut National Telephone*, 181 USPQ 125 (TTAB 1974), *pet. denied*, 181 USPQ 779 (Comm'r 1974) ........................................ 19

*Pearson Education v ABC Books*, 19 cv 7642 (RA) (S.D.N.Y. 30 June 2020) ..................... 4, 6, 7

*Pirone v Macmillan*, 894 F.2d 579 (2d Cir. 1990) ........................................ 13

*Schutte Bagclosures v Kwik Lok Corp.*, 48 F. Supp. 3d 675 (S.D.N.Y. 2014)........................... 4, 5

*South Dakota v Wayfair, Inc.*, 585 U.S. ___, 138 S. Ct. 2080.................................... 8, 9

*Starbucks v Wolfe's Borough Coffee*, No. 01 Civ. 5981 (LTS) (THK) (S.D.N.Y. Dec. 23, 2005) 15

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) ........................................ 13

*Tigercat v Caterpillar*, No. 16-cv-1047-GMS, 2018 U.S. Dist. LEXIS 74191 (D. Del. 2 May 2018) ........................................ 19, 20

*Valmonte v. Bane*, 18 F.3d 992 (2d Cir. 1994) ........................................ 13

*Vandermark v Jotomo*, 839 NYS 2d 670, 42 A.D. 931(2007) ........................................ 5, 6

*WowWee Group v Meirly*, 18 cv 706 (AJN) (S.D.N.Y. 2019)........................................ 6

*Zippo Mfg Co. v Zippo Dot Com*, 952 F. Supp. 1119 (W.D. Pa. 1997)........................................ 6

**Other Authorities**

15 U.S.C. § 1057(b) ................................................................................................ 14

28 U.S.C. §1391 ..................................................................................................... 12

Fed. R. Civ. P. 12(b)(2) ........................................................................................... 4

Federal Rule of Civil Procedure 12(b)(3) ............................................................. 12

Federal Rule of Civil Procedure 12(b)(6) ............................................................. 13

New York Civil Practice Law and Rules § 302(a)(1) .............................................. 5

New York General Business Law ("NY GBL") § 360-l .......................................... 17

New York General Business Law §349 .................................................................. 17

New York General Business Law §350 .................................................................. 17

TMEP § 1207.01(d)(v) ........................................................................................... 14

TMEP § 1207.01a ................................................................................................... 14

TMEP § 510.02(a) n.8 ............................................................................................ 19

Plaintiff Blockchange Ventures I GP, LLC ("Blockchange") respectfully submits this memorandum of law in opposition to the motion to dismiss the complaint submitted by Defendant Blockchange, Inc. ("Defendant").

## Introduction

### The Parties

Blockchange provides venture capital, development capital, private equity, investment funding and wealth management exclusively in the field of digital assets. It is based in the City of New York. Blockchange owns United States Trademark Registration 5676113 for "Blockchange" covering its services. Exhibit 1 Blockchange is a leader in the digital investment field and manages approximately $1 billion of assets on behalf of individuals and institutions, some of them introduced to the company by registered investment advisors.

Blockchange has been providing services under the BLOCKCHANGE mark since at least as early as 2017. The trademark appears prominently in all Blockchange advertising and promotional materials, and has become synonymous with the Blockchange brand. Complaint ¶¶ 33, 34 Blockchange offers for sale and sells its services in interstate commerce, in the State of New York, this judicial district and elsewhere. Complaint ¶¶ 32, 35

Defendant provides investment services and wealth management exclusively in the field of digital assets, also known as cryptocurrency or "crypto," and investment services. It is based in San Francisco. The field of digital assets is a new, specialized area of investment that both Blockchange and Defendant inhabit. Defendant is "an ecosystem of investment advisors" that employs a "team of crypto visionaries and investment advisors." Complaint ¶ 10; Exhibit 2

Defendant has not registered the trademark BLOCKCHANGE. Complaint ¶ 29 In 2019 the United States Trademark Office rejected two applications filed by Defendant for the

trademark because its use of a "Blockchange" mark creates a likelihood of confusion with the registered BLOCKCHANGE mark. Complaint ¶ 30; Exhibit 3 Defendant did not appeal and abandoned its applications. Exhibit 4

In January 2021 Defendant applied for the mark BLOCKCHANGE covering the same kind of services as the applications rejected in 2019. All the services covered by the application lie exclusively in the field of digital assets and investment services. Exhibit 5

The specimens submitted to support the sworn Statement of Use demonstrating that Defendant offers its services for sale in interstate commerce include some thirty screenshots of pages from its website.[1] Each page prominently features the BLOCKCHANGE mark. One of the specimens states "An Introduction to Crypto Investing for RIAs [registered investment advisors]." Exhibit 6

Defendant continues willfully to infringe the BLOCKCHANGE mark by posting prominent images of the term "Blockchange" on its website and elsewhere. Complaint ¶ 37

On 7 June 2019 Blockchange requested Defendant to cease and desist infringing the BLOCKCHANGE mark. Defendant refused. Complaint ¶ 38 Blockchange repeated its request on 20 August 2020 and again on 24 August 2020. Defendant maintained its refusal. Complaint ¶ 39

**Procedural Background**

Blockchange filed a trademark infringement case against Defendant in the United States District Court for the Southern District of New York on 25 August 2020.

On 29 January 2021 the Hon. Alvin Hellerstein dismissed the case without prejudice based on insufficient service of process, lack of jurisdiction and improper venue. Exhibit 7 The

---

[1] Defendant does not exclude New York from the reach of its offerings in the application.

Court did not consider Defendant's Federal Rule of Civil Procedure 12(b)(6) arguments or the merits of the case. On 1 February 2021 Blockchange filed the case underlying Defendant's current motion.[2]

## Statement of Facts

Defendant operates a highly interactive website that sells its investment services throughout the United States, including the State of New York. Complaint ¶¶ 11, 12 Defendant transmits computer files, including video files, via the site to customers in New York. Complaint ¶ 13 The site permits the exchange of information between Defendant and customers in New York. Complaint ¶ 14; Exhibit 5

Defendant engages in highly targeted advertising through its website and social media accounts, which provide Defendant with instant access to customers in New York. Complaint ¶¶ 18, 19 Defendant's website uses cookies so it and third parties may collect information about visitors to the site. Complaint ¶ 20; Exhibit 8

Defendant is engaged in business with Gemini Trust Company, LLC, a New York entity ("Gemini"). Complaint ¶ 21 Defendant also is engaged in business with Vimeo, Inc., a company with its headquarters in New York ("Vimeo") Complaint ¶ 27

Defendant also has a collaborative integrated partnership with Gemini under the "Blockchange" name. Complaint ¶ 23; Exhibits 9, 10 and 11 Through its partnership with Gemini, Defendant offers services to customers in New York through a "secure one-stop shop." Complaint ¶ 26 Defendant cannot sell those services and other investment services absent its partnership with Gemini. Complaint ¶ 26

---

[2] In response to the Blockchange lawsuit for trademark infringement, Defendant filed a petition to cancel the BLOCKCHANGE mark with the Trademark Trial and Appeal Board of the United States Trademark Office. Blockchange has filed a petition to stay the proceeding because this case is pending.

**Argument**

## Jurisdictional Standard

A district court has "broad discretion" in deciding a motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). *Schutte Bagclosures v Kwik Lok Corp.*, 48 F. Supp. 3d 675, 683 (S.D.N.Y. 2014) A plaintiff need only make a *prima facie* case that a defendant is subject to the court's jurisdiction. *Id.* at 683-84 "[A] complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level." *Keiler v Harlequin Enterprises*, 751 F.3d 64, 70 (2d Cir. 2014) (citation omitted). The Court accepts all factual allegations in the complaint as true[3] and draws all reasonable inferences in the light most favorable to the plaintiff. *Gibbons v Malone*, 703 F.3d 595, 599 (2d Cir. 2013)

At this stage of the case a motion to dismiss for lack of jurisdiction may be defeated by legally sufficient allegations alone:[4]

> "Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction. At th[is] preliminary stage, the plaintiff's *prima facie* showing may be established solely by allegations." *Dorchester Financial Securities v Banco BRJ*, 722 F. 3d 81, 84-85 (2d Cir. 2013); *Pearson Education v ABC Books*, 19 cv 7642 (RA) (S.D.N.Y. 30 June 2020)

"Because the Lanham Act does not provide for nationwide service of process, this Court looks to the personal jurisdiction rules of the forum state. The Court must therefore determine whether New York law allows the exercise of personal jurisdiction and, if so, whether doing so

---

[3] The signal refusal of Defendant to accept the pleaded facts as true renders its arguments unsound.

[4] If the Court retains reservations about the propriety of jurisdiction, then discovery limited to the issue rather than dismissal of the case would be the appropriate course. *Indemnity Ins. Co. of North Amer. v K-Line Amer*, 06 Civ. 0615 (BSJ), *consolidated with* 06 Civ. 2557, 06 Civ. 2956, 06 Civ. 2962, 06 Civ. 3038, 06 Civ. 3040, 06 Civ. 3042, at *19 (S.D.N.Y. June 13, 2007) ("Discovery on the issue of personal jurisdiction may be permitted in the court's discretion if plaintiffs allege facts that would support a colorable claim of jurisdiction.")

4

comports with constitutional due process guarantees." *Id.* at 684 (internal citations omitted) New York Civil Practice Law and Rules § 302(a)(1) authorizes jurisdiction where a defendant "transacts business within the state or contracts anywhere to supply goods or services in the state." CPLR § 302(a)(1).

A defendant "transacts business" in a state where it purposefully avails itself of the privilege of conducting activities and therefore invokes the benefits and protections of its laws. *Schutte Bagclosures*, 48 F. Supp. at 684

"A single transaction of business is sufficient to give rise to jurisdiction under CPLR § 302(a)(1), even where the defendant never enters the state, if the claim arises out of the transaction." *Citigroup v City Holding Co.*, 97 F. Supp. 2d 549, 564 (S.D.N.Y. 2000); *Schutte* at 684 ; *Pearson* 19-cv-7642 (RA) at 9 The single transaction may be conducted via the internet, that is, electronically:

> "It is well-settled that 'long-arm jurisdiction [lies] over commercial actors and investors using electronic and telephonic means to project themselves into New York to conduct business transactions.' (*Deutsche Bank Sec., Inc. v Montana Bd. Of Invs.*, 7 N.Y. 3d 65 [2006], *cert. denied* 549 US __ , 127 S. Ct. 32 (2006)" *Vandermark v Jotomo*, 839 NYS 2d 670, 42 A.D. 931(2007) *quoting Deutsche Bank* (citation omitted)

The Blockchange claims are related to the transactions it alleges because

> "in trademark infringement cases, the injury requirement is satisfied by harm and threatened harm resulting from actual or potential confusion and deception of internet users in New York State." *Energy Brands v Spiritual Brands*, 574 F. Supp. 2d 458, 467 (S.D.N.Y. 2008); Complaint ¶¶ 28, 31, 36

## Defendant transacts business in New York

Blockchange has alleged that the business Defendant transacts in New York is substantially related to its claims. Defendant highlights its services by posting prominent,

enlarged images of the term "Blockchange" on the highly interactive website that sells its services in New York. Complaint ¶¶ 11, 37

At this stage of the case those allegations alone are sufficient to support jurisdiction because

> "there is an issue of fact whether [Defendant's] creation and maintenance of a Web site amounts to the transaction of business in New York, and that issue turns on whether the Web site has significant commercial elements, which typically are found to constitute the transaction of business." *Vandermark*, 839 N.Y.S. at 670; 42 A.D. 3d at 932, *citing Citigroup*, 97 F. Supp. 2d at 565

**Defendant is present in New York through the operation of its website**

To determine whether the existence of a website supports jurisdiction in New York, courts in this Circuit apply the analysis established by *Zippo Mfg Co. v Zippo Dot Com*, 952 F. Supp. 1119 (W.D. Pa. 1997) and amplified in subsequent cases. *Pearson*, 19 cv 7642 (RA) at 2

Those cases assess websites on a sliding scale. The presence of a 'highly interactive' website alone is sufficient to confer jurisdiction; sites considered interactive occupy a middle ground.[5] *Citigroup*, 97 F. Supp. 2d at 565 (In addition to "City Holding Company," "City National" was a defendant in the case.)

"Highly interactive" websites offer services for sale to customers. *Pearson*, 19 cv 7642 (RA) at 2 (applying the *Citigroup* standard); *WowWee Group v Meirly*, 18 cv 706 (AJN) (S.D.N.Y. 2019) at 6

A website also is highly interactive if it "knowingly and repeatedly transmits computer files to customers in other states."[6] *Citigroup*, 97 F. Supp. at 565 Computer files include, among

---

[5] Judge Hellerstein did not address either the sliding scale analysis or the subject of interactive websites in his order dismissing the prior complaint.
[6] It does not appear from the text of *Citigroup*, which was decided two decades ago, that City National actually sold anything through its website.

other things, video streams. Exhibit 12 ([www.techterms.com/definition/file](www.techterms.com/definition/file) (19 October 2007) (accessed 21 January 2021))

A website is "interactive" if it "permits the exchange of information between users in another state and the defendant." *Citigroup*, 97 F. Supp. at 565 "Generally, an interactive website supports a finding of personal jurisdiction over the defendant." *Pearson*, 19 cv 7642 (RA) at 2

"Passive" sites are less determinative of jurisdictional questions than interactive sites but still may support jurisdiction. A website is passive if all a visitor can do is look at it.

Defendant cites *Citicorp* to argue that infringement occurs only in the jurisdiction where a website is created or maintained. (Defendant's Memorandum at 6) That assertion is misleading and inverts the analysis of *Citigroup*. Following its observation about website location, the *Citigroup* court explained that "the significance of the website shifts to the extent there is interaction between City National and New York residents," just as Blockchange alleges there is interaction between Defendant and New York residents. Complaint ¶¶ 12, 13, 19, 23, 32

In fact, the *Citicorp* court found "no evidence that [defendant's] websites were created in New York or are maintained on New York servers" but upheld jurisdiction because the site

> "offers the possibility of an online 'chat' with City National representatives. To the extent that such chats involve the transmission of messages that contain allegedly infringing marks to New York residents, City National should be deemed to have attempted to pass off the mark within New York rather than outside it." *Citigroup*, 97 F. Supp. at 567

Blockchange has alleged that Defendant operates a highly interactive website that is a sophisticated marketing tool. Complaint ¶¶ 11, 13-19 Defendant itself admits in its sworn statement to the Trademark Office that its website offers services for sale to customers, and Blockchange has alleged that Defendant sells its services to New Yorkers through the site. Complaint ¶¶ 3, 12, 19, 23, 26, 32; Exhibits 5 and 6

As in *Citigroup,* Defendant's website offers visitors an online chat--along with considerably more contact than the contact described in *Citigroup.* Complaint ¶¶ 14-17; Exhibit 13 The frontpage includes some seven other buttons that a visitor can click to: learn more about Defendant's services; contact Defendant; stream video demonstrations; and request a personal contact. Complaint ¶ 14; Exhibit 2 Clicking three other phrases, for 'managing client accounts,' 'allocation and rebalancing,' and 'strategies for digital assets,' takes the visitor deeper into the site to access detailed information about those services. Complaint ¶ 15; Exhibit 2 The frontpage features ten other buttons a visitor can click to obtain detailed information about Defendant's services and four links, to Facebook, LinkedIn, Instagram and Twitter, for the exchange of information. Complaint ¶ 16; Exhibit 2

Once a visitor lands on a page within the site, more interactive options appear: a visitor may view or request more detailed video demonstrations; transmit information, including the opportunity to email Defendant for a personalized demonstration; and request other information about the services Defendant offers under the "Blockchange" name. Complaint ¶ 17; Exhibit 14; Exhibit 15

The Supreme Court of the United States recognized the burgeoning significance of internet contacts in *South Dakota v Wayfair, Inc.*, 585 U.S. ___, 138 S. Ct. 2080 *Wayfair* held that a state may tax sales by an entity that has an internet presence. There the defendant offered its products for sale only online: It had no physical presence in the state.

*Wayfair* found that

> "a company with a website accessible in [a State] may be said to have a physical presence in the State via the customers' computers. A website may leave cookies saved to the customers' hard drives … Between targeted advertising and instant access to most consumers via any internet-enabled device, a business may be present in a State in a meaningful way without the presence being physical in the traditional sense. This Court

should not maintain a rule that ignores these substantial virtual
connections to the State." 585 U.S. at ___, 138 S. Ct. at 2095

The case was not a dispute over personal jurisdiction but it necessarily follows that if an entity is present in a state then the state has jurisdiction over it. Defendant admits that it offers its services for sale online. Its website leaves cookies on the computers of its visitors "to collect information about" them.[7] Complaint ¶ 20; Exhibits 5 and 6 The website also advertises its product and provides instant access to consumers. Complaint ¶¶ 18, 19; Exhibit 16

**Defendant transacts business with New York Entities**

Defendant states that it is "one of Gemini's *customers*" and describes what it buys from Gemini as a means to serve an investment firm. (emphasis in original) (Defendant's Memorandum at 7) That transaction alone is sufficient to support jurisdiction because Defendant causes actual or potential confusion by prominently displaying its 'Blockchange' logo on all of its materials. *Citigroup*, 97 F. Supp. 2d at 564 (S.D.N.Y. 2000); *Energy Brands*, 571 F. Supp. 2d at 467

The contacts of Defendant with New York go beyond a single transaction. Defendant maintains that it is "utilizing Gemini as a utility." (Eyre reply declaration, Exhibit D to defendant's "Bradford Declaration") In addition, Defendant identifies Gemini as a "third party vendor[ ]" to collect and share with other entities information about visitors to the site. Complaint ¶ 21; Exhibit 16 Defendant also transacts business with Gemini as a "Sub-Processor" to provide it with infrastructure services. Complaint ¶ 22; Exhibit 8

---

[7] Cookies are text files that the operator of a website uses to identify visitors and target them by sending specific, personalized content depending on the visitors' history browsing the internet.

Defendant transacts business with Vimeo in connection with its website. Complaint ¶ 27 Vimeo streams video computer files for the site, an activity that *Wayfair* identifies as creating a presence in a state. Complaint ¶¶ 14, 27; Exhibit 14

In *Citigroup* the court found that the retention of New York firms by City National to record mortgages was another factor that supported jurisdiction. 97 F. Supp. 2d at 566 City National was a customer of the firms in the same way as Defendant admits it is a customer of Gemini and Vimeo.

**Defendant engages in an integrated collaborative partnership with a New York entity**

Defendant makes the representation that it and Gemini are partners. Complaint ¶¶ 23, 24 One of its statements appears under the 'Blockchange' logo in capital letters: "News provided by Blockchange Inc… San Francisco and New York." That in turn appears under the banner headline "Blockchange and Gemini Partner in Industry First to Bring Digital Assets to Registered Investment Advisors. Solution is secure one stop shop for RIAs." The document continues:

> "Blockchange Inc… and Gemini Trust Co. LLC… today announced a partnership to provide registered investment advisors (RIAs) a secure one-stop-shop…. The integrated solution is the first of its kind, combining Blockchange's… Platform… with Gemini's exchange and custody solution. The Blockchange-Gemini solution will allow… RIAs to actively and securely manage digital assets…." Exhibit 9

Defendant prominently posts the headline "Winklevoss' Gemini collaborates on 'one-stop' crypto shop for RIAs" on the frontpage of its website and provides buttons to disseminate the information via Facebook, Twitter and LinkedIn. Defendant also includes that quoted language to support its sworn statement that it offers services through the collaboration for sale

in interstate commerce via the site.[8] Exhibit 5 The post itself states that Defendant has "partnered with Gemini" and collaborates with it. Complaint ¶ 24; Exhibit 2 The site also refers to a "Gemini-Blockchange offering." Exhibit 11

Gemini prominently displays the title "GEMINI BLOCKCHANGE" at its website as if the companies are a single entity. The name appears above the headline "Gemini Partners with Blockchange to Bring Digital Assets to Registered Investment Advisors." The statement begins: "Today we are excited to announce our partnership and integration with Blockchange Inc." and describes the "one stop shop" Defendant and Gemini share. It also refers several times to a "Blockchange-Gemini solution." Exhibit 10

Defendant argues that no partnership, agency relationship or contract exists between it and Gemini. (Defendant's Memorandum at 7) To support the argument, Defendant has submitted an artfully crafted declaration from its Chief Executive Officer, Dan Eyre. He states that no partnership exists between Defendant and Gemini because "[t]here is no contract or joint enterprise[9] by or between the entities." (Eyre reply declaration, Exhibit D to Defendant's "Bradford Declaration")[10]

It is an audacious argument. During August 2020 Mr. Eyre stated without equivocation: "Gemini is the perfect partner for Blockchange to offer digital asset management capabilities to RIAs." That statement contradicts his subsequent declaration.

---

[8] A statement made at a website is likely to be believed by the public reading it. *Mohebbi v Khazan*, 50 F. Supp. 3d 1234, 1260 (ND Cal 2014)

[9] Although the arrangements can be similar, a partnership need not be a joint venture. See, *e.g.*, *Hanlon v Melfi*, 423 N.Y.S. 2d 132,133, 102 Misc. 2d 170, 172-73 (2d Dept. 1979); *Eng*, 21 Cal. App. 5th at 692 n4, 230 Cal. Rptr. 3d at 786 n4

[10] Defendant first disclosed the Eyre declaration as an exhibit to the Reply Brief it submitted in support of its motion to dismiss the case before Judge Hellerstein. Judge Hellerstein relied on the Eyre Declaration in dismissing the previous complaint. (Exhibit A to Defendant's "Bradford Declaration" at 3) Defendant did not disclose Mr. Eyre's contrary statement from Exhibit 9 to the Court, and Blockchange was not given the opportunity to address the contradiction.

And entities need not execute a contract to enter a partnership:

> "A partnership contract can be either oral or written. Even in the absence of an explicit agreement, the existence of a partnership may be implied from the conduct, intention, and relationship between the parties." (citations omitted) *Growblox Sciences v GCM Admin. Services*, 14 Civ. 2280 (ER) at 13 (S.D.N.Y., 31 March 2016)

The conduct of Defendant indicates it has entered into a partnership with Gemini because Defendant says it participates in the partnership, and cannot sell through the "one-stop shop" it shares with Gemini without it. Complaint ¶ 26; see, e.g., Exhibits 9-11

## Venue is proper in this judicial district

Where jurisdiction is not founded solely on diversity of citizenship, an action may be filed in a judicial district where a substantial part of the events or omissions underlying the claim occurred. *Gulf Ins. Co. v Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005) (*quoting* 28 U.S.C. § 1391) On a motion to dismiss for improper venue under Fed. R. Civ. P. 12(b)(3), this Court applies the same standard of review that it applies to a motion to dismiss for lack of personal jurisdiction. *Id.* Blockchange therefore only must make a *prima facie* showing that venue is proper.

Blockchange sufficiently has alleged that venue in the district is proper:

a. Blockchange offers and sells its services in interstate commerce and the State of New York, including this judicial district. Complaint ¶¶ 5, 32;

b. Defendant offers and sells its products in interstate commerce and the State of New York, including this district. Complaint ¶¶ 3, 12; and

c. A substantial proportion of the events giving rise to the claims of Blockchange occurred and continue to occur in this district. Complaint ¶ 4.

d. Gemini and Vimeo are present in this district. Complaint ¶¶ 21, 27

e. Defendant offers its services to New York consumers through its website, which includes a chat feature and leaves cookies on the computers of its visitors "to collect information about" them. Complaint ¶¶ 12, 14, 20; Exhibit 16 f.

    f.  Defendant has entered into a partnership with Gemini, an entity incorporated and located in New York. (this memorandum at 9-12)

Defendant's use of the BLOCKCHANGE mark has caused and will continue to cause confusion within this district, and the intellectual property rights of Blockchange are being infringed and diluted by Defendant. Complaint ¶¶ 31, 36 Blockchange therefore sufficiently has alleged that venue is proper in this district.

## Blockchange sufficiently alleged its causes of action

Under Fed. R. Civ. P. 12(b)(6) a complaint "need only meet the requirements of our 'simplified notice pleading standard that relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims.'" *Courtenay Communications Corp. v Hall*, 334 F. 3d 210, 213 (2d Cir. 2003) (*quoting Swierkiewicz v Sorema*, 534 U.S. 506, 512 (2002)) For purposes of a motion to dismiss, all factual allegations in a complaint must be accepted as true and all reasonable inferences should be drawn in the plaintiff's favor. *Gant v Wallingford Bd. of Ed.*, 69 F.3d 669, 673 (2d Cir. 1995) Defendant's motion therefore should be granted only if Blockchange can prove no set of facts to support its claims that would entitle it to relief. *Valmonte v Bane*, 18 F.3d 992, 998 (2d Cir. 1994) (*quoting Conley v Gibson*, 355 U.S. 41, 45-46 (1957))

## Blockchange sufficiently alleged its trademark infringement and unfair competition claims

To state a claim for trademark infringement under both the Lanham Act and the common law, a plaintiff must assert that it is the owner of a valid and legally protectable trademark and that the defendant's use of the mark is likely to cause confusion. *Van Praagh v Gratton*, 993 F. Supp. 2d 293, 301 (E.D.N.Y. 2014); *Pirone v Macmillan*, 894 F.2d 579, 581 (2d Cir. 1990)

Courts analyze Federal unfair competition claims under a "substantially similar" standard. *Id.* at

300

Blockchange has a registered United States trademark entitled to protection. Complaint

¶¶ 6, 42, 49. "A certificate of registration of a mark upon the principal register is prima facie

evidence of the validity of the registered mark." 15 U.S.C. § 1057(b)

Blockchange properly has alleged that the infringing use of the BLOCKCHANGE mark

by Defendants is likely to cause and has caused consumer confusion with Blockchange.[11] The

complaint alleges:

a. Blockchange has been using its registered BLOCKCHANGE mark since 2017. Complaint ¶ 7;

b. Blockchange places the mark on all of its advertising and promotional material. Complaint ¶ 33;

c. The BLOCKCHANGE mark has become synonymous with the Blockchange brand and distinguishes its services from the services of others. Complaint ¶ 34;

d. Both Blockchange and Defendant offer their services for sale in interstate commerce, operate in the same channels of trade and share similar customers. Complaint ¶ 35; and

e. By offering for sale, selling and promoting its services using the BLOCKCHANGE mark Defendant is increasing the likelihood of confusion between the services offered by Blockchange and Defendant's infringing services. Complaint ¶¶ 35-37, 44, 45.

Defendant's insistence that Blockchange demonstrate actual confusion is misplaced. That

showing is not even required at trial, let alone at this pre-discovery stage. *LVL XIII Brands v*

---

[11] The services offered by a defendant need not be identical to the services provided by the owner of a trademark to cause a likelihood of confusion and infringe the mark. *On-line Careline Inc. v Am. Online Inc.*, 229 F.3d 1080, 1086 (Fed. Cir. 2000) The services need only be "related in some manner and/or if the circumstances surrounding their marketing are such that they could give rise to the mistaken belief that [the services] emanate from the same source." *Coach Servs., Inc. v Triumph Learning LLC*, 668 F.3d 1356, 1369 (Fed. Cir. 2012) "If the marks of the respective parties are identical… the relationship between the services… need not be as close to support a likelihood of confusion… " and the "classification of… services has no bearing on the question…. " TMEP §§ 1207.01a, 1207.01(d)(v) (citations omitted)

*Louis Vuitton Malletier*, 209 F. Supp. 3d 612, 671 (S.D.N.Y. 2016); *Starbucks v Wolfe's Borough Coffee*, No. 01 Civ. 5981 (LTS) (THK) (S.D.N.Y. Dec. 23, 2005) at 9; *Cuisinarts v Robot-Coupe Intern. Corp.*, 509 F. Supp. 1036, 1043 (S.D.N.Y. 1981)

Common law unfair competition claims "mirror the Lanham Act" but require an additional showing of bad faith. *Katiroll Co. v Kati Junction*, 33 F. Supp. 3d 359, 367 (S.D.N.Y. 2014) "Bad faith generally refers to an attempt by a junior user of a mark to exploit the goodwill and reputation of a senior user by adopting the mark with the intent to sow confusion between the two companies' products." *Id.* at 368

Defendant has refused to cease and desist infringing the BLOCKCHANGE mark on at least three occasions. Complaint ¶¶ 38, 39 Two of the refusals occurred after the Trademark Office rejected Defendant's applications for the trademark BLOCKCHANGE because its use of "Blockchange" creates a likelihood of confusion with the registered BLOCKCHANGE mark. Complaint ¶ 30; Exhibit 3 Defendant did not appeal and abandoned its applications. Exhibit 4 Despite those facts, Defendant continues to use and infringe the BLOCKCHANGE mark. Complaint ¶¶ 29, 38, 39 Defendant is trading on the goodwill and reputation of Blockchange despite its prior knowledge of the registered BLOCKCHANGE mark and therefore has infringed and continues to infringe the mark in bad faith. Complaint ¶¶ 45, 54, 60, 72

**Blockchange sufficiently alleged its trademark dilution claims**

A claim for trademark dilution is proper where a plaintiff alleges that: (1) the mark is famous and distinctive; (2) its mark is used in commerce; and (3) the defendant's use is likely to cause dilution through blurring or tarnishment. *Van Praagh*, 993 F. Supp. at 304

A trademark need not be a 'Dupont' or 'Kodak' to be famous under the Lanham Act so long as it acquires consumer recognition and distinctiveness as the designator of the owner's goods and:

> "In determining the degree of consumer recognition, courts will look to the same kind of evidence used to determine it the mark has a secondary meaning, namely 'advertising expenditures;' (2) consumer studies linking the name to a source; (3) sales success; (4) unsolicited media coverage; (5) attempts to plagiarize the mark; and (6) the length and exclusivity of the mark's use." *Goat Fashion. v 1661*, 19 cv 11045 (PAE) (S.D.N.Y. Sep. 28, 2020) at 22 (citations omitted)

Blockchange sufficiently has alleged that the BLOCKCHANGE mark is distinctive and famous:

a. Blockchange has been providing its services under the registered BLOCKCHANGE mark since at least as early as 2017. Complaint ¶ 7;

b. The BLOCKCHANGE mark is integral to the Blockchange brand and appears prominently in all of its advertising and promotional material. Complaint ¶ 33;

c. The BLOCKCHANGE mark has become synonymous with its brand and distinguishes its services from the services offered by others. Complaint ¶ 34;

d. Blockchange uses its trademark to promote all its services and has promoted them throughout the United States. Complaint ¶ 50;

e. The BLOCKCHANGE mark is distinctive and famous within Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c). Complaint ¶ 51; and

f. The BLOCKCHANGE mark became distinctive and famous prior to the acts of Defendant. Complaint ¶ 52.

Blockchange also has alleged that Defendant uses the BLOCKCHANGE mark in interstate commerce:

a. The Blockchange services offered for sale in interstate commerce operate in the same channels of trade as Defendant's infringing services. Both brands of service share the same or similar customers, increasing the likelihood of confusion between the Blockchange mark and Defendant's infringing services. Complaint ¶35; and

b. Defendant has highlighted its services by posting prominent, enlarged images of the term "Blockchange" on the website that offers its services for sale. Complaint ¶ 37.

Blockchange sufficiently has alleged that Defendant's use of the BLOCKCHANGE mark is likely to cause dilution by whittling away the mark's selling power and value through its unauthorized use. *Van Praagh*, 993 F. Supp. at 304 (defining "blurring" as "the whittling away of the established trademark's selling power and value through its unauthorized use by others") The complaint alleges:

a. Blockchange provides venture capital, development capital, private equity, and investment funding. Complaint ¶ 5;

b. Defendant provides investment services and uses the Blockchange trademark to provide those services. Complaint ¶ 8, 11;

c. Defendant offers its services in the same channels of trade as Blockchange and the companies share the same or similar customers. Complaint ¶ 35;

d. By offering for sale and selling its services, Defendant is likely to cause and has caused consumer confusion, and has infringed and diluted the BLOCKCHANGE mark. Complaint ¶¶ 35, 36; and

e. Defendant's willful acts of trademark dilution have caused and unless enjoined will continue to cause substantial and irreparable damage to Blockchange, which has no adequate remedy at law. Complaint ¶ 55

Courts analyze claims of trademark dilution under New York General Business Law ("NY GBL") § 360-l in the same manner as Federal dilution claims, except that a plaintiff need not allege that its trademark is famous. *A.V.E.L.A. v Estate of Marilyn Monroe, LLC*, 131 F. Supp. 3d 196, 212 (S.D.N.Y. 2015). Blockchange therefore sufficiently has alleged its NY GBL dilution claim for the same reasons it established its dilution claim under the Lanham Act.

**Blockchange sufficiently alleged its claim for deceptive acts and practices under NY GBL §§ 349 and 350**

A claim of deceptive trade practices under NY GBL §§ 349 and 350 requires allegations that (1) Defendant's deceptive acts were directed at consumers; (2) the acts were misleading in a

material way; and (3) Blockchange has been injured as a result. *Dentsply Int'l v Dental Brands for Less*, No. 15 cv 8775(LGS) (S.D.N.Y. Jul. 25, 2016) at 8 (*quoting Maurizio v Goldsmith*, 230 F. 3d 518, 521 (2d Cir. 2000))

Blockchange properly has alleged that Defendant's deceptive actions are directed at consumers. The complaint alleges that Defendant offers for sale and sells its products to consumers in New York. Complaint ¶¶ 3, 12, 79 It also alleges that Defendant's acts are misleading in a material way because:

a.  Blockchange owns the BLOCKCHANGE mark and places it prominently in all of its advertising and promotional materials. Complaint ¶ 33;

b.  Defendant has not registered the trademark "Blockchange" for its services. Complaint ¶ 29;

c.  Defendant uses the BLOCKCHANGE mark in its advertising and on its website. Complaint ¶ 37; and

d.  Defendant offers its services to the same or similar customers as Blockchange and operates in the same channels of commerce, which is likely to cause consumer confusion. Complaint ¶¶ 35-37

Blockchange has alleged that it has been injured as a result of the acts enumerated in subparagraphs b-d. Ordinary consumers would not and do not recognize any difference between the services provided by Blockchange and Defendant. Complaint ¶ 28 Defendant's deceptive acts and false advertising have caused and will continue to cause consumer confusion, and dilution and blurring of the BLOCKCHANGE mark. Complaint ¶¶ 35, 36, 46, 62, 74, 82

**A stay of this case in deference to a TTAB proceeding is not appropriate**

Defendant argues that this Court should take the unusual step of staying this case in deference to a trademark cancellation proceeding before the Trademark Trial and Appeal Board of the United States Trademark Office (the "Board" or the "TTAB") because Blockchange is attempting to delay resolution of this dispute.

The argument is baseless, and inconsistent: Defendant also argues that in promptly filing the complaint in this case, Blockchange has moved with untoward haste. (Defendant's Memorandum at 1) It also lacks logic: Blockchange filed this case to protect its registered trademark from Defendant's ongoing, damaging infringement, relief it may not request through a cancellation petition before the TTAB. Blockchange filed its case with this Court because it is the proper tribunal for adjudicating infringement claims: Defendant only filed its cancellation proceeding in response to this case.

Where, as in this case, the final determination of a civil action may have a bearing on the issues before the Board, its normal practice is suspension of the proceeding before it. 37 CFR § 2.117(a)

This case will determine the issues before the Board, but "the civil action does not have to be dispositive of the Board proceeding to warrant suspension, it need only have a bearing on the issues before the Board." 99 USPQ2d at 1552; TMEP § 510.02(a) n.8; *Other Telephone v Connecticut National Telephone*, 181 USPQ 125, 126-27 (TTAB 1974), *pet. denied*, 181 USPQ 779 (Comm'r 1974) (As in this case, decision in civil action for infringement and unfair competition would have a bearing on the outcome of Trademark Act § 2(d) claim before Board)

Defendant cites *Tigercat v Caterpillar*, No. 16-cv-1047-GMS, 2018 U.S. Dist. LEXIS 74191 (D. Del. 2 May 2018), as its basis to demand what it concedes would be a "very rare" stay of this case. (Defendant's Memorandum at 2-3) The facts of *Tigercat*, however, bear no resemblance to it.

In *Tigercat*, the lawsuit was "in its early stages." *Tigercat* 6 In contrast, as the *Tigercat* court explained, at the time the motion for the stay had been filed:

> "The TTAB opposition has been extensive and longstanding. Over the
> course of three years the parties have engaged in discovery proceedings

> before the TTAB and have 'collectively serv[ed] 106 interrogatories, 172 document requests, and 332 requests for admission, and produc[ed] over 35,000 pages of documents. The parties have taken a total of 22 depositions…. '" *Tigercat* 2-3

The parties also had commissioned consumer surveys and expert linguistic reports. Serial disputes had required repeated intervention by the TTAB itself and by Federal Judges in two different districts. During the same period the parties were engaged in lawsuits involving the same dispute in Belgium, Finland, Germany, New Zealand, Sweden and the United Kingdom. *Tigercat* 3

In this case, nothing has transpired before the TTAB. Defendant has suffered no hardship and will not suffer hardship if the TTAB proceeding is suspended in the normal procedural course.

## Conclusion

For the reasons stated in this memorandum: (1) this Court has jurisdiction over Defendant; (2) venue is proper in this jurisdiction; (3) the complaint adequately alleges all of the Blockchange causes of action against Defendant; and (4) staying this case in deference to the TTAB proceeding is not appropriate. Defendant has caused and will continue to cause irreparable harm by infringing the right of Blockchange to the use of its registered BLOCKCHANGE mark. Blockchange is entitled to injunctive relief, actual damages, Defendant's profits, and, where appropriate, treble, punitive or exemplary damages as a result of Defendant's willful disregard of the right of Blockchange to use its BLOCKCHANGE mark.

Dated: 17 March 2021

Respectfully submitted,

By: */s/ Blake Perkins* _____
Blake Perkins, Counsel
26 Broadway, 17th Floor
New York, NY 10014
212-797-1007 (Tel.)
212-563-9280 (Fax)
perkins@blake-perkins.com

Rania V. Sedhom
Sedhom Law Group, PLLC
445 Park Avenue, 9th Floor
New York, NY 10022
212-549-1819 (Tel.)
212-563-9280 (Fax)
rsedhom@bespokelawfirm.com

*Attorneys for Plaintiff Blockchange Ventures I GP, LLC*