UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

BLOCKCHANGE VENTURES I GP, LLC,

        *Plaintiff,*

      v.

BLOCKCHANGE, INC.,

        *Defendant.*

------------------------------------------------------------ x

Case No. 21-cv-891 (PAE)

Related Case No. 20-cv-6866 (AKH)

---

### REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE COMPLAINT WITH PREJUDICE <u>PURSUANT TO FED. R. CIV. P. 12(b) OR STAY THE ACTION</u>

---

MARK BRADFORD, P.C.
Mark Bradford
299 12th Street
Brooklyn, NY 11215
(347) 413-3287

*Attorney for Defendant*
*Blockchange, Inc.*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...............................................................................................iii

**I.** DESPITE NUMEROUS ATTEMPTS, PLAINTIFF STILL CANNOT SHOW THAT THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANT.....................1

**II.** PLAINTIFF'S NEW COMPLAINT SHOULD ALSO BE DISMISSED FOR IMPROPER VENUE UNDER FED. R. CIV. P. 12(b)(3). ...............................................5

**III.** THE NEW COMPLAINT SHOULD BE DISMISSED UNDER FED. R. CIV. P. 12(b)(6) FOR FAILING TO PROPERLY PLEAD ANY CLAIM UPON WHICH RELIEF MAY BE GRANTED. .......................................................................................5

    **A.** Trademark Infringement and Unfair Competition (Counts I, III, IV, and V) .............5

    **B.** Trademark Dilution (Counts II and VII)...................................................................6

    **C.** Deceptive Acts and Practices, N.Y. GEN. BUS. L. §§ 349, 350 (Count VI)................7

**IV.** ALTERNATIVELY, THE COURT SHOULD STAY THIS ACTION PENDING RESOLUTION OF THE CANCELLATION ACTION CURRENTLY BEFORE THE TTAB. ...................................................................................................................7

CONCLUSION ..............................................................................................................8

# TABLE OF AUTHORITIES

**CASES**

*A.V.E.L.A., Inc. v. Estate of Marilyn Monroe, LLC,*
  131 F. Supp. 3d 196 (S.D.N.Y. 2015) ........................................................................7

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544, 127 S. Ct. 1955 (2007)......................................................................5, 6

*Capitol Records, LLC v. VideoEgg, Inc.,*
  611 F. Supp. 2d 349 (S.D.N.Y. 2009) ........................................................................2

*Citigroup Inc. v. City Holding Co.,*
  97 F. Supp. 2d 549 (S.D.N.Y. 2000) ......................................................................2, 3

*Conley v. Gibson,*
  355 U.S. 41 (1957) ....................................................................................................6

*Goya Foods v. Tropicana Prods.,*
  846 F.2d 848 (2d Cir. 1988) ......................................................................................7

*Kaplan, Inc. v. Yun,*
  16 F. Supp. 3d 341 (S.D.N.Y. 2014) ..........................................................................7

*Rhoades v. Avon Prod., Inc.,*
  504 F.3d 1151 (9th Cir. 2007) ....................................................................................8

*Royalty Network v. Dishant.com,*
  638 F. Supp. 2d 410 (S.D.N.Y. 2009) ....................................................................2, 3

*South Dakota v Wayfair, Inc.,*
  585 U.S. ___, 138 S. Ct. 2080 (2018).........................................................................4

*Tigercat Int'l v. Caterpillar,* No. 16-cv-1047-GMS,
  2018 U.S. Dist. LEXIS 74191 (D. Del. May 2, 2018).............................................7, 8

**STATUTES**

N.Y. C.P.L.R. § 302(a)(1)..................................................................................... 1, 2, 3

N.Y. GEN. BUS. L. §§ 349, 350 ...............................................................................7

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(2) ..........................................................................................1, 5

Fed. R. Civ. P. 12(b)(3) ..........................................................................................1, 5

Fed. R. Civ. P. 12(b)(4) ..........................................................................................1

Fed. R. Civ. P. 12(b)(6) .................................................................................. 1, 5, 7

Fed. R. Civ. P. 60 ...................................................................................................1

Defendant BLOCKCHANGE INC. ("**Defendant**"), by and through its undersigned

counsel, respectfully offers this reply memorandum of law in further support of its motion,

pursuant to Fed. R. Civ. P. 12(b)(2), -(3), and -(6), for an order dismissing with prejudice the

complaint in this action (the "**New Complaint**") filed by plaintiff, BLOCKCHANGE

VENTURES I GP, LLC ("**Plaintiff**"), or, alternatively, staying this action pending resolution of

the cancellation proceeding between the parties currently before the Trademark Trial and Appeal

Board (the "**TTAB Proceeding**").[1] This reply is also in response to Plaintiff's Memorandum of

Law in Opposition to the motion, dated March 17, 2021. ("**Opp. Mem.**")

## I.   DESPITE NUMEROUS ATTEMPTS, PLAINTIFF STILL CANNOT SHOW THAT THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANT.

Plaintiff's hapless attempts to show that this Court has jurisdiction over Defendant under

N.Y. C.P.L.R. § 302(a)(1) – in two complaints and now two motions to dismiss – Plaintiff's

arguments are simply overwhelmed by Judge Hellerstein's dismissal of the prior complaint in the

above-referenced Related Case.[2] Irrespective of whether Plaintiff could have attempted to move

for relief from the Hellerstein Order under Rule 60, it fails to make any substantive new

allegations of fact nor to offer any legal support not already considered – and rejected – by Judge

Hellerstein.

The accessibility of Defendant's website to New York residents simply does not

constitute the "transact[ing of] any business within the state or contract[ing] anywhere to supply

---

[1] *Blockchange, Inc. v. Blockchange Ventures I, LLC*, Cancellation No. 92075295 (T.T.A.B.).

[2] Order Granting Motion to Dismiss issued by Judge Alvin K. Hellerstein, U.S.D.J., dated January 29, 2021 ("**Hellerstein Order**"), in the Related Case, *Blockchange Ventures I GP, LLC v. Blockchange, Inc.*, Case No. 20-cv-06866 (AKH), and annexed as **Exhibit A** to the Declaration of Mark Bradford ("**Bradford Decl.**") accompanying the moving papers.

goods or services in the state" necessary to subject Defendant to long arm jurisdiction under section 302(a)(1). Plaintiff's steady repetition of the terms "interactive" and "highly interactive" in its brief cannot make it so, because the website is neither.

As the court stated in *Royalty Network v. Dishant.com*, 638 F. Supp. 2d 410 (S.D.N.Y. 2009), "[w]here an 'interactive' website is not only available but also purposefully directs activity into a forum state – for example, by making sales of goods or services to New York residents – those activities can be sufficient to trigger jurisdiction under section 302(a)(1)." 638 F. Supp. 2d at 418-19. A website that doesn't conduct "traditional business" for jurisdictional purposes may still raise a "middle ground" inquiry, "and thus the jurisdictional inquiry requires closer evaluation of its contact with New York residents." *Id.* at 419 (citing *Capitol Records, LLC v. VideoEgg, Inc.*, 611 F. Supp. 2d 349, 358 (S.D.N.Y. 2009), *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 565 (S.D.N.Y. 2000)). Plaintiff's problem under this standard is not – as it complains in its brief – that Defendant somehow misrepresented what the standard was (Opp. Mem. 7), or that Judge Hellerstein somehow neglected to "address either the sliding scale analysis or the subject of interactive websites" referenced in *Citigroup* (Opp. Mem. 6 n.5). The problem is that Plaintiff cannot allege anything about Defendant's website that comes *anywhere near* to requiring such an analysis by the Court.

After a lengthy explication of what "interactive" means (Opp. Mem. 6-7), Plaintiff takes two whole paragraphs and more to describe the ways – including "chat" and, yet again, "cookies"[3] – by which users of the site users may "access detailed information" about Defendant's

---

[3] *See* Hellerstein Order at 3: "Moreover, the mere accessibility of Defendant's website *and its use of cookies* is insufficient to constitute transacting business in New York." (emphasis added) (quoting *Royalty Network*, 638 F. Supp. 2d at 418 ("Because websites are . . . equally accessible everywhere, the mere availability of the site to

services. (Opp. Mem. 8, 9 & n.7.) In short, no matter how elaborately Plaintiff attempts to describe it, accessing information about Defendant's business is all that one can do on the website and none of it meets the definition of "interactive" let alone "purposefully doing business in New York" under any of the relevant case law.

In *Royalty Network*, notwithstanding that the website in that case allowed users to register and download material from it, the court stated that "[i]t stretches the meaning of 'transacting business' too far to subject defendants to personal jurisdiction in any state merely for operating a website. . . without, some evidence or allegation that commercial activity in that state actually occurred or was actively sought." 638 F. Supp. 2d at 420 (internal quote omitted). Moreover, in *Citigroup*, the court held that it had jurisdiction over defendant under 302(a)(1) not simply because customers in New York could "click on a 'hyper link' to 'chat' online with [defendant's] representative," but insofar as this "interactivity" was for the purpose of "apply[ing] for loans online." 97 F. Supp. 2d. at 565.[4]

In contrast, Plaintiff alleges nothing more specific than that "The website provides Defendant with instant access to customers in New York and in this judicial district." (New Compl. ¶ 19, cf. Opp. Mem. at 7 (citing New Compl. ¶¶ 3, 12, 19, 23, 26, 32).) Plaintiff's attenuated application of "interactivity" to its allegations about the informativeness of Defendant's website is insufficient to resuscitate the settled question of this Court's jurisdiction over Defendant under § 302(a)(1).

---

users in New York, standing alone, does not amount to transacting business in the state for purposes of section 302(a).").

[4] Accordingly, Plaintiff's sidebar to the effect that *Citigroup* doesn't indicate whether that defendant "actually sold anything through its website" (Opp. Mem. 6 n.6) would be disingenuous were it not simply incorrect.

Just as unavailing are Plaintiff's allegations with respect to Defendant's dealings with Gemini Trust Company, LLC ("**Gemini**"). On its motion to dismiss the Prior Action, Defendant offered the sworn statement of its CEO, Daniel Eyre, that Defendant was "utilizing Gemini as a utility, essentially" – that "in order to service one of our registered investment advisor clients, Quantum Capital Management, of San Francisco, we implemented an application programming interface ('API') between our SaaS [Software as a Service] and Gemini's systems."[5] Plaintiff has nothing new to add to its allegations in the Prior Action, except to cite a press release, in which Eyre apparently used the word "partner" with respect to Gemini, as a "contradiction" of his statement that Plaintiff "was not given the opportunity to address." (Opp. Mem. 11 & n.10.) Judge Hellerstein made his ruling on the basis of Mr. Eyre's sworn statement, and in no way can Plaintiff reasonably allege that anything Daniel Eyre swore to was untrue, nor does it offer any authority to the effect that the terminology used in a press release would – or even could – alter Judge Hellerstein's finding that "even if such a partnership [between Defendant and Gemini] existed, Plaintiff has not shown that its causes of action arise out of the partnership." (Hellerstein Order at 3.) In addition, Plaintiff's repeated insistence that Defendant's engaging Vimeo as a video hosting platform triggers long arm jurisdiction (Opp. Mem. at 10) is simply a distortion of the law, to which its citation yet again to a wholly irrelevant case[6] is merely part and parcel.

Accordingly, the New Complaint should be dismissed – with prejudice – for failure to

---

[5]  Reply Declaration of Daniel Eyre, executed October 6, 2020, ¶ 5, annexed as **Exhibit D** to Bradford Decl.

[6] As Defendant argued on the motion to dismiss in the Prior Action, "In [*South Dakota v Wayfair, Inc.*, 585 U.S. ___, 138 S. Ct. 2080 (2018)], the Court held that an out-of-state seller *shipping its product into another state* could be held responsible for collecting and remitting the recipient state's sales tax. *See* 138 S. Ct. at 2099-2100. There is no discussion of personal jurisdiction whatsoever, nor does the case offer any applicable parallels to this matter." (Reply Mem., Oct. 6, 2020, at 2-3.)

plead personal jurisdiction over Defendant under Fed. R. Civ. P. 12(b)(2).

## II. PLAINTIFF'S NEW COMPLAINT SHOULD ALSO BE DISMISSED FOR IMPROPER VENUE UNDER FED. R. CIV. P. 12(b)(3).

Defendant stands on its prior papers with respect to the insufficiency of this venue under Fed. R. Civ. P. 12(b)(3). Plaintiff offers nothing in its brief not fully addressed and answered in the moving papers.

## III. THE NEW COMPLAINT SHOULD BE DISMISSED UNDER FED. R. CIV. P. 12(b)(6) FOR FAILING TO PROPERLY PLEAD ANY CLAIM UPON WHICH RELIEF MAY BE GRANTED.

Insofar as Judge Hellerstein did not address Plaintiff's pleading of its substantive causes of action under Fed. R. Civ. P. 12(b)(6), Plaintiff has opted to leave the wording of those allegations exactly as they appeared in the Prior Complaint. As such, the fundamental defects remain the same: entirely conclusory and/or mere recitations of the elements of the causes of action, particularly with respect to whatever possible or actual injury Plaintiff allegedly suffered. Plaintiff does nothing in opposing the instant motion except to reiterate these elements yet again. This is insufficient on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964-65 (2007). For the most part, Defendant stands on the arguments in its moving brief, with the exception of the points discussed below.

### A. Trademark Infringement and Unfair Competition (Counts I, III, IV, and V)

Plaintiff erroneously suggests that Defendant believes a demonstration of actual confusion to be a pleading requirement (Opp. Mem. at 14), but that is beside the point. In both of its complaints, Plaintiff has pleaded that *actual confusion has occurred* (New Compl. ¶¶ 31, 36, 46, 62, 66, 68, 74), but it has done so in the wholly conclusory fashion that characterizes all of its substantive pleadings: e.g., "By offering for sale and selling its services, Defendant is likely to cause, and *has caused, consumer confusion*, and has infringed and diluted the Blockchange

5

mark." (New Compl. ¶ 36 (emphasis added).) Nowhere in either of its two complaints – in two bites of the same apple – has Plaintiff managed even one *specific* allegation of actual confusion occurring as a result of Defendant's mark. Accordingly, even in the pleading stages, Plaintiff is leaning impermissibly hard upon a broad speculation as to what discovery might show with respect to its own alleged injury, when the operative pleading standard precludes that "a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." *Twombly*, 127 S. Ct. at 1968 (quoting and distinguishing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Plaintiff is essentially alleging that Defendant's mark "has caused" confusion, because it somehow "must have" caused it. This is not merely conclusory – it's an unusually precise demonstration of what the word "conclusory" means.

As noted in the moving papers – and in the prior motion – Plaintiff has attempted to compensate for its thin factual allegations by striving to make the parties' businesses appear confusingly similar: e.g., "the same channels of trade" and "the same or similar customers." (*See* New Compl. ¶ 35.). All that the parties' businesses share is subject matter. Plaintiff provides investment capital. (*See* New Compl. ¶ 5.) Defendant provides computer-based tools for professional investment advisors. (Eyre Decl. ¶ 3.) If, as Plaintiff claims, "[t]he field of digital assets is a new, specialized area of investment" (Opp. Mem. at 1), it is difficult to understand – and Plaintiff cannot make clear – just which consumers in this field would be confused and how.

## B.    Trademark Dilution (Counts II and VII)

Defendant rests on the arguments in its prior papers with respect to the wholly conclusory character of Plaintiff's claims under its dilution causes of action, as well as all of the others.

### C. Deceptive Acts and Practices, N.Y. GEN. BUS. L. §§ 349, 350 (Count VI).

Plaintiff continues to ignore its signal failure to differentiate its allegations with respect to

the state claim for deceptive acts and practices from its allegations with respect to alleged

trademark infringement. (*Compare* New Compl. ¶¶ 35-37, with ¶¶ 79-80.) As the alleged

"deceptive acts or practices . . . are precisely the acts that constitute the alleged trademark

infringement," this claim fails as a matter of law. *A.V.E.L.A., Inc. v. Estate of Marilyn Monroe,

LLC*, 131 F. Supp. 3d 196, 217 (S.D.N.Y. 2015) (quoting *Kaplan, Inc. v. Yun*, 16 F. Supp. 3d

341, 352-53 (S.D.N.Y. 2014)).

In short, as demonstrated above and in Defendant's prior papers, this Court should

dismiss the Complaint in its entirety, pursuant to Fed. R. Civ. P. 12(b)(6).

### IV. ALTERNATIVELY, THE COURT SHOULD STAY THIS ACTION PENDING RESOLUTION OF THE CANCELLATION ACTION CURRENTLY BEFORE THE TTAB.

With respect to the possibility of a stay of this action pending resolution of the TTAB

Proceeding, the parties agree on one point: such a stay *would* be a "very rare" thing. Plaintiff

views this as a "concession" on Defendant's part. (Opp. Mem. at 19.) In contrast, Defendant

views the appropriateness of such unusual relief in this matter as emblematic of a weak – and, by

all available indications, unimprovable – set of pleadings.

Plaintiff's only response is to point to the factual differences between this matter's

procedural history and that in *Tigercat Int'l v. Caterpillar*, No. 16-cv-1047-GMS, 2018 U.S.

Dist. LEXIS 74191 (D. Del. May 2, 2018). The primary relevance of *Tigercat* to the instant

matter is the way in which that court underscored a shift in emphasis from the "primary

jurisdiction" rule guiding the Second Circuit in *Goya Foods v. Tropicana Prods.*, 846 F.2d 848

(2d Cir. 1988), to instead "focus its attention on efficiency." *Tigercat*, 2018 U.S. Dist. LEXIS

74191 at *9 (citing *Rhoades v. Avon Prod., Inc.*, 504 F.3d 1151, 1165 (9th Cir. 2007) ("The deciding factor should be efficiency; the district court should exercise jurisdiction if this court is more efficient; otherwise, not.")). To the question of relative efficiencies, Plaintiff has no answer. Accordingly, Defendant again respectfully requests that this Court exercise its discretion toward limiting any and all delays by the Plaintiff, whether by dismissal or a stay of this action.

## CONCLUSION

For the foregoing reasons, and as argued in the moving memorandum, Defendant respectfully requests that this Court issue an order dismissing the Complaint in its entirety, with prejudice, or staying this action pending resolution of cancellation action currently before the T.T.A.B., and granting such other, further, and different relief as this Court may deem just and proper.

Dated: New York, New York
      April 1, 2021

MARK BRADFORD, P.C.

Mark Bradford
299 12th Street
Brooklyn, New York 11215-4903
Telephone: (347) 413-3287
Email: mb@markbradfordpc.com

*Attorney for Defendant*
*Blockchange Inc.*

8