UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

BLOCKCHANGE VENTURES I GP, LLC.,

                               Plaintiff,                    21 Civ. 891 (PAE)

                -v-                                OPINION & ORDER

BLOCKCHANGE, INC.,

                               Defendant.

------------------------------------------------------------

PAUL A. ENGELMAYER, District Judge:

Blockchange Ventures I GP, LLC ("Plaintiff"), a New York company, has sued Blockchange, Inc. ("Defendant"), a California company, alleging trademark infringement, trademark dilution, and unfair competition under the Lanham Act; common law trademark infringement and unfair competition; deceptive acts and practices in violation of New York General Business Law ("GBL") §§ 349 and 350; and trademark dilution under GBL § 360-L.

Pending now is Defendant's motion to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6), for lack of personal jurisdiction, lack of venue, and for failure to state a claim. Because the Court finds that jurisdictional discovery would assist the Court in resolving threshold, genuine disputes of jurisdictional fact regarding Defendant's New York contacts—and thus this Court's jurisdiction over Defendant—the Court directs the parties to engage in limited jurisdictional discovery. It accordingly denies Defendant's motion without prejudice to its renewal following such discovery.

I.     **Background**

    A.     **Factual Background**[1]

        1.     **Parties**

Plaintiff, based in New York, is "engaged in the provision of venture capital, development capital, private equity, investment funding and wealth management exclusively in the field of digital assets." Compl. ¶ 5. Plaintiff characterizes Defendant, a California corporation with its headquarters in San Jose, CA, as dealing in "investment services and wealth management exclusively in the field of digital assets." *Id.* ¶ 8. Defendant denies that it is an investor, and counters that it is instead a software-as-a-service ("SaaS") provider for "SEC-regulated registered investment advisors." Daniel Eyre Decl. ¶ 3. In its supporting declarations, Defendant alleges that it has no business ties to New York—no address, servers, bank account, real or personal property, telephone listing, or agents or employees in the state—and that it does not "buy or sell any assets in New York" or "solicit business in New York." Caroline Eyre Decl. ¶¶ 4–5. It is vague, however, as to whether the "assets" it refers to includes the SaaS product that it provides to investment advisors.

---

[1] The Court's account of the factual allegations is mostly drawn from the Complaint. Dkt. 1 ("Compl."). On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the Court may look beyond the four corners of the complaint and consider materials outside of the pleadings, including accompanying affidavits, declarations, and other written materials. *See Jonas v. Est. of Leven*, 116 F. Supp. 3d 314, 323 (S.D.N.Y. 2015) (citing *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012)). The allegations in the complaint are presumed true "to the extent they are uncontroverted by the defendant's affidavits," *MacDermid*, 702 F.3d at 727 (citation omitted), and all factual disputes are resolved in the plaintiff's favor, *see DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001). Accordingly, in connection with Defendant's motion to dismiss for lack of personal jurisdiction, the Court has considered the exhibits attached to Plaintiff's Complaint, the declaration of Mark Bradford, Esq., in support of Defendant's motion to dismiss, Dkt. 12 ("Bradford Decl."), and attached exhibits, including the declarations of Caroline Eyre, Dkt. 12-3 ("Caroline Eyre Decl."), and Daniel Eyre, Dkt. 12-4 ("Daniel Eyre Decl."). The Court has also considered the affirmation of Rania V. Sedhom, Esq., in opposition to Defendant's motion, Dkt. 15-1 ("Sedhom Decl."), and attached exhibits.

### 2. The Trademark Dispute

Plaintiff claims to have provided its services under the name "Blockchange" since at least 2017. Compl. ¶ 7; *see also id.*, Ex. 1 ("Registration"). On February 19, 2019, it received a trademark in the mark "Blockchange" from the U.S. Patent and Trademark Office ("USPTO"). *See* Registration at 1. The trademark was issued under the registration number 5,676,113 in International Class 36, for the provision of "venture capital, development capital, private equity and investment funding." *Id.*

Defendant also operates its business under the name "Blockchange." Compl. ¶ 31. It applied for a trademark in that name, but in September 2019, the USPTO rejected two applications it filed for the mark, citing the "likelihood of confusion with the mark BLOCKCHANGE in U.S. Registration No. 5676113," *i.e.*, the likelihood of confusion with Plaintiff's mark. *Id.*, Ex. 10 at 3; *see* Compl. ¶ 30. Plaintiff alleges that ordinary customers do not recognize any distinction between the services it and Defendant provide, and that, as a result, Defendant's continued use of the mark in providing its services to customers is likely to cause, and has caused, consumer confusion. Compl. ¶¶ 28, 31.

On June 7, 2019, Plaintiff, through counsel, emailed Defendant asking that Defendant cease and desist using the "Blockchange" mark. *Id.* ¶ 38. Defendant refused and continued to use the mark. *Id.* In August 2020, Plaintiff renewed its cease-and-desist demands, but Defendant again refused. *Id.* ¶ 39. On August 25, 2020, plaintiff filed a complaint in this District, alleging trademark infringement, trademark dilution, and unfair competition under federal and state law, as well as deceptive acts and practices under GBL §§ 349 and 350. Bradford Decl., Ex. B. On January 29, 2021, Judge Hellerstein dismissed that complaint for lack of service and personal jurisdiction. *Id.*, Ex. A.

### 3. Defendant's New York Contacts

In its Complaint here, Plaintiff alleges that Defendant "knowingly and repeatedly sells its investment services via [its] site to customers in New York." Compl. ¶ 12. It does not provide further detail about such sales or identify any specific transactions, or support that claim with any affidavits, exhibits, or further factual allegations. It does, however, allege specific facts about Defendant's website, which Plaintiff characterizes as "highly interactive" and which features the term "Blockchange" prominently. *Id.* ¶ 11. It alleges, for example, that the website "permits the exchange of information between Defendant and customers," *id.* ¶ 14, that customers can click various buttons on the site to learn more about Defendant's services and contact Defendant's employees, *id.* ¶¶ 14–17, and that Defendant's website uses cookies to collect and store information about visitors to the site, *id.* ¶ 20. As a result, Plaintiff alleges, "[t]he website provides Defendant with instant access to customers in New York and in this judicial district." *Id.* ¶ 19.

Defendant also has a business relationship of some kind with Gemini Trust Company, LLC ("Gemini"), which Plaintiff characterizes as a "third party vendor" and "subprocessor" that "provide[s] infrastructure services" to Defendant in connection with the allegedly infringing "Blockchange" mark. *Id.* ¶¶ 21–22. Plaintiff describes the relationship between Defendant and Gemini as a "collaborative integrated partnership" to "offer digital asset management capabilities to customers in New York . . . under the infringing 'Blockchange' name," *id.* ¶ 23, pointing to certain press releases by Defendant and Gemini to support this characterization. *Id.*; *see id.*, Exs. 2, 7–9 (press releases claiming, *inter alia*, that Gemini "partnered with Blockchange, a digital asset investing platform, to create a 'one-stop' shop" for investors to transact in digital assets). The Complaint thus alleges that, through its partnership with Gemini, Defendant "offers its infringing services to customers in New York." Compl. ¶ 26.

Finally, Plaintiff claims that Defendant is "engaged in business with Vimeo," a company with headquarters in New York, "in connection with its website that prominently features Defendant's infringing services." *Id.* ¶ 27. Plaintiff does not elaborate on the nature of this relationship or Vimeo's business, either in its Complaint or its opposition brief.

Defendant denies that its website establishes personal jurisdiction over it, and otherwise disputes most of Plaintiff's jurisdictional allegations. First, it largely denies that it transacts business in New York. In a declaration, Defendant's CFO, Caroline Eyre, claims:

> Defendant is not incorporated or licensed to do business in New York, does not have an address in New York, does not maintain any bank account in New York, does not own any real or personal property in New York, maintains neither an office nor telephone listing in New York, does not have any agents or employees who regularly work in New York, does not buy or sell any assets in New York, does not solicit business in New York[,] is not the owner or officer of any business in New York, is not the controlling shareholder of any corporation registered in New York, and has never instituted any legal action in New York.

Caroline Eyre Decl. ¶ 5. Although she disclaims "solicit[ing] business in New York" and avers that Defendant "does not buy or sell any assets in New York," Ms. Eyre's declaration is unclear as to whether Defendant sells, or has sold, its SaaS product to any customers in New York. Second, Defendant disputes Plaintiff's characterization of its relationship with Gemini. According to the declaration of Defendant's CEO, Daniel Eyre, "[t]here is no contract or joint enterprise by or between" Gemini and Defendant, and the only relationship Defendant has with Gemini is through the "implement[ation of] an application programming interface ('API') between [Defendant's] SaaS and Gemini's systems" for the benefit of one of Defendant's non-New York customers. Daniel Eyre Decl. ¶ 5. In sum, he claims, Defendant is "utilizing Gemini as a utility, essentially." *Id.* Defendant does not address the descriptions of the partnership between it and Gemini contained in its and Gemini's press releases on the subject.

### B. Procedural History

On August 25, 2020, Plaintiff first filed suit against Defendant. *See* Bradford Decl., Ex. B. On January 29, 2021, Judge Hellerstein granted Defendant's motion to dismiss for lack of personal jurisdiction, insufficient service, and lack of venue. *Id.*, Ex. C. On February 1, 2021, Plaintiff commenced this action. *See* Compl. On February 25, 2021, Defendant filed a motion to dismiss, Dkt. 11, a memorandum in support, Dkt. 13 ("Def. Mem."), and the Bradford declaration. On March 17, 2021, Plaintiff opposed defendant's motion, Dkt. 15 ("Pl. Mem."), and filed the Sedhom declaration. On April 1, 2021, Defendant replied. Dkt. 16 ("Def. Reply").[2]

## II. Legal Standard

### A. Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction

On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), "the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." *DiStefano*, 286 F.3d at 84 (citation omitted); *see In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013). "[T]he showing a plaintiff must make to defeat a defendant's claim that the court lacks personal jurisdiction over it 'varies depending on the procedural posture of the litigation.'" *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)).

---

[2] During these judicial proceedings, the parties have also litigated the validity of Plaintiff's trademark registration before the Trademark Trial and Appeal Board ("TTAB"). According to Defendant, on September 22, 2020, Defendant commenced a TTAB proceeding against Plaintiff, seeking cancellation of Plaintiff's mark. Def. Mem. at 1. On December 1, 2020, the TTAB stayed that case pending resolution of the motion to dismiss before Judge Hellerstein. *Id.* at 2. On January 29, 2021, the same day Judge Hellerstein granted that motion, Defendant filed a motion to resume the stayed TTAB proceeding. *Id.* On February 9, 2021, eight days after it filed this action, Plaintiff moved to suspend the TTAB proceeding. *Id.* Here, Defendant has sought, in the alternative to dismissal, a stay of this case pending the outcome of the TTAB proceeding. *See id.* at 13–15.

The Court "construe[s] the pleadings and affidavits in the light most favorable to plaintiffs, resolving all doubts in their favor." *Dorchester Fin. Sec.*, 722 F.3d at 85 (quoting *S. New Eng. Tel. Co. v. Global NAPs, Inc.*, 624 F.3d 123, 138 (2d Cir. 2010)); *see A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir. 1993) ("[A]ll allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party."). Nevertheless, the Court "will not draw argumentative inferences in the plaintiff's favor" and need not "accept as true a legal conclusion couched as a factual allegation." *In re Terrorist Attacks*, 714 F.3d at 673 (citation omitted); *see also Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012).

### B.   Requirements for Personal Jurisdiction

There are three requirements for a federal court to lawfully exercise personal jurisdiction. "First, the plaintiff's service of process upon the defendant must have been procedurally proper." *Licci*, 673 F.3d at 59. Second, "there must be a statutory basis for personal jurisdiction that renders such service of process effective." *Id.* Third, "the exercise of personal jurisdiction must comport with constitutional due process principles." *Id.* at 60; *see Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–78 (1985). Here, Defendant challenges only whether Plaintiff has presented a sufficient statutory basis, under New York's long-arm statute—specifically, N.Y. C.P.L.R. ("CPLR") § 302(a)(1)—to support personal jurisdiction. *See* Def. Mem. at 5.[3] The only statutory basis Plaintiff has asserted for personal jurisdiction is CPLR § 302(a)(1). *See* Compl. ¶ 3; Pl. Mem. at 5.

---

[3] Defendant also challenges venue as improper here, but largely on the same basis that it challenges personal jurisdiction. *See* Def. Mem. at 8 ("Plaintiff nowhere sufficiently pleads any events giving rise to the Plaintiff's claims occurring in New York State."). Because this argument depends on the jurisdictional arguments Defendant raises, the Court does not separately address the venue issue today. If discovery reveals a basis for personal jurisdiction in New York State but not in this District, Defendant may so argue after discovery.

CPLR § 302(a)(1) authorizes the exercise of personal jurisdiction over a foreign entity if it "transacts any business within the state or contracts anywhere to supply goods or services in the state." A party "transacts business" within the state when it "purposefully avails itself of the privilege of conducting activities within New York." *Ehrenfeld v. Bin Mahfouz*, 9 N.Y.3d 501, 508 (2007) (cleaned up). "Purposeful activities are those with which a defendant, through volitional acts, avails itself of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws." *Fischbarg v. Doucet*, 9 N.Y.3d 375, 380 (2007) (citation omitted). Section 302(a)(1) is a single-act statute: "[P]roof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Chloe v. Queen Bee of Beverly Hills*, 616 F.3d 158, 170 (2d Cir. 2010) (quoting *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467 (1988)).

To establish personal jurisdiction under CPLR § 302(a)(1), the cause of action must also "arise from" the defendant's business activities within New York. A claim "arises from" a particular transaction "when there is some articulable nexus between the business transacted and the claim sued upon, or when there is a substantial relationship between the transaction and the claim asserted." *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006) (quoting *McGowan v. Smith*, 52 N.Y.2d 268, 272 (1981)). As the New York Court of Appeals has explained, however, this inquiry "is relatively permissive," and "causation is not required" to satisfy this second prong. *Licci v. Lebanese Canadian Bank, SAL*, 20 N.Y.3d 327, 339 (2012). Rather, Plaintiff's claims need only be "in some way arguably connected to" Defendant's business transactions in New York. *Id.* at 340.

### C. Jurisdictional Discovery

"In evaluating jurisdictional motions, district courts enjoy broad discretion in deciding whether to order discovery." *In re Terrorist Attacks on Sept. 11, 2001*, 349 F. Supp. 2d 765, 811–12 (S.D.N.Y. 2005) (collecting cases), *aff'd*, 538 F.3d 71 (2d Cir. 2008). "A district court retains considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction." *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003) (cleaned up). "If a plaintiff has identified a genuine issue of jurisdictional fact, jurisdiction[al] discovery is appropriate even in the absence of a *prima facie* showing as to the existence of jurisdiction." *Daventree Ltd. v. Republic of Azerbaijan*, 349 F. Supp. 2d 736, 761 (S.D.N.Y. 2004) (citing *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 207–08 (2d Cir. 2003)). But courts need not "subject a foreign corporation to discovery where the allegations of jurisdictional facts, construed most favorably in the plaintiff's favor, fail to state a basis for the exercise of jurisdiction or where a plaintiff's proposed discovery, if granted, would not uncover facts sufficient to sustain jurisdiction." *Id*. (citing *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185–86 (2d Cir. 1998)).

## III. Discussion

Plaintiff primarily argues that the accessibility of Defendant's website to New York customers is sufficient to support personal jurisdiction over Defendant. *See* Compl. ¶¶ 12–20; Pl. Mem. at 5–9. It also argues that Defendant's partnership with Gemini supports personal jurisdiction because Gemini is a New York entity, and Defendant's partnership with Gemini allows Defendant to offer its services for sale to customers in New York under the infringing "Blockchange" mark. Defendant denies that it transacts any business in New York; rejects that its website, which is equally accessible throughout the United States, supports personal jurisdiction; and denies that its relationship with Gemini has anything to do with Plaintiff's claims.

9

These disagreements present genuine disputes of jurisdictional fact; as a result, the Court concludes that limited jurisdictional discovery is necessary to reliably determine whether there is personal jurisdiction over Defendant. That is so for two reasons: (1) the parties' contentions on the instant motion leave unclear whether Defendant sells its services to customers in New York, through its website or otherwise; and (2) the parties present polar depictions of the relationship between Defendant and Gemini, such that the Court cannot determine, on the present record, whether Defendant's business with this New York entity has any relation to the claims of trademark infringement, dilution, and unfair competition in this lawsuit. The Court addresses each in turn.

### A. Defendant's Website

The Second Circuit has acknowledged the usefulness of the 'sliding scale' framework first advanced in *Zippo Manufacturing Company v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997), to "help frame the jurisdictional inquiry" in analyzing website-based personal jurisdiction under CPLR § 302(a)(1). *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 252 (2d Cir. 2007). On one end of this "scale" are defendants who have "simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions," which cannot support personal jurisdiction alone. *Zippo*, 952 F. Supp. at 1124; *see, e.g.*, *Paterno v. Laser Spine Inst.*, 24 N.Y.3d 370, 377 (2014) (collecting cases). On the other are those who "knowing[ly] and repeated[ly] transmit[tted] computer files over the Internet," over whom there may be, according to some courts, specific jurisdiction.[4] *Id.* Websites that courts in this Circuit have found to be

---

[4] Some courts in this District have suggested that the operation of a "highly interactive" website that merely *allows* New York customers to purchase goods or services, without any allegation or evidence that such customers *actually* made purchases through that website, may suffice under CPLR § 302(a)(1). *See, e.g.*, *Mattel, Inc. v. Animefun Store*, No. 18 Civ. 8824 (LAP), 2020 WL 2097624, at *4 n.7 (S.D.N.Y. May 1, 2020) ("Defendants offered counterfeit goods for sale in

"fully interactive" are those which directly facilitate transactions between the company and its customers in New York.  *See, e.g.*, *New Angle Pet Prods., Inc. v. MacWillie's Golf Prods., Inc.*, No. 06 Civ. 1171 (DRH), 2007 WL 1871345, at *3 (E.D.N.Y. June 28, 2007) (collecting cases). "The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer.  In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." *Zippo*, 952 F. Supp. 1119 at 1124.  Websites that fall into the "middle category" tend to be those which are interactive and allow for the exchange of information between customers and a business, but do not directly facilitate transactions.[5]

---

New York and provided for shipping to New York . . . a fact that the Court of Appeals has noted is 'sufficient,' even in the absence of any resulting sales, to provide for personal jurisdiction." (citing *Cartier v. Seah LLC*, 598 F. Supp. 2d 422, 425 (S.D.N.Y. 2009))); *see also Thomas Pub. Co. v. Indus. Quick Search, Inc.*, 237 F. Supp. 2d 489, 491–92 (S.D.N.Y. 2002) (If defendant "wishes to operate an interactive website accessible in New York, there is no inequity in subjecting [it] to personal jurisdiction here.").  Other courts have held that, even where a website is highly interactive and directly facilitates the sale of a good or service, plaintiffs still must show that the defendant has in fact, made such sales into the state.  *See, e.g.*, *Guglielmo v. JEGS Auto., Inc.*, No. 20 Civ. 5376 (LJL), 2021 WL 1026168, at *4 (S.D.N.Y. Mar. 17, 2021) ("The fact that a New York consumer can purchase products from a company's website, without evidence that the consumer actually did make such purchases, does not alone establish personal jurisdiction."); *Alibaba Grp. Holding Ltd. v. Alibabacoin Found.*, No. 18 Civ. 2897 (JPO), 2018 WL 2022626, at *4 (S.D.N.Y. Apr. 30, 2018) (collecting cases holding that even highly interactive websites, on their own, do not support personal jurisdiction under CPLR § 302(a)(1) "unless some degree of commercial activity occurred in New York" (quoting *ISI Brands, Inc. v. KCC Int'l, Inc.*, 458 F. Supp. 2d 81, 87–88 (E.D.N.Y. 2006))).  As discussed below, Plaintiff here has not shown even that customers *can* make purchases from Defendant directly through its website.  Thus, the Court does not have occasion to determine whether the mere offering of sales to New York customers would suffice to establish that Defendant is "transacting business" under CPLR § 302(a)(1).

[5] Some examples are: those that permit customers to send their information to the company, *see, e.g.*, *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 565–66 (S.D.N.Y. 2000); those with chat functions which connect customers to company representatives, *see, e.g.*, *id.*; those with blog and message boards, *see, e.g.*, *Pitbull Prods., Inc. v. Universal Netmedia, Inc.*, No. 07 Civ. 1784 (RMB) (GWG), 2008 WL 1700196, at *5–6 (S.D.N.Y. April 4, 2008); those that allow users to "download program information," "access . . . form[s]," and contact institutional

As to the latter, courts in this Circuit have exercised personal jurisdiction where the Defendant runs a semi-interactive site accessible to New Yorkers *and* Defendant sells or sold services in the state: "The combination of the semi-interactive website which allows out-of-state consumers to commence a purchase through the website and the actual sale of products to New York . . . satisfies the 'transacting business' prong of New York's long-arm statute." *Two's Co., Inc. v. Hudson*, No. 13 Civ. 3338 (NSR), 2014 WL 903035, at *5 (S.D.N.Y. Mar. 6, 2014); *Hsin Ten Enter. USA, Inc. v. Clark Enters.*, 138 F. Supp. 2d 449, 456 (S.D.N.Y. Dec. 29, 2000) (exercising jurisdiction under CPLR § 302(a)(1) when defendant operated an interactive website *and* sold products to New York residents). On the other hand, the mere operation of a semi-interactive website, without sales into New York, has generally not supported personal jurisdiction under CPLR § 302(a)(1). *See, e.g.*, *Alibaba Grp.*, 2018 WL 2022626, at *4 (collecting cases); *see also, e.g.*, *Am. Girl, LLC v. Zembrka*, No. 21 Civ. 2372 (MKV), 2021 WL 1699928, at *5–7 (S.D.N.Y. Apr. 28, 2021) (offering products for sale, via a highly interactive website, does not support personal jurisdiction under CPLR § 302(a)(1) without actual sales); *Pearson Educ., Inc. v. Shi*, 525 F. Supp. 2d 551, 556 (S.D.N.Y. 2007) ("Simply maintaining a web site in a distant state that residents of New York visit does not, by itself, subject a defendant to jurisdiction in New York. However, one who makes sales to New York customers through an interactive web site may be subject to the jurisdiction of courts in this state." (citation omitted)); *ISI Brands*, 458 F. Supp. 2d at 87–88 ("Even the existence of an interactive 'patently commercial' website that can be accessed by New York residents is not sufficient to justify the exercise of personal jurisdiction

---

representatives, *see, e.g.*, *Camacho v. Ne. Univ.*, 18 Civ. 10693 (ER), 2019 WL 5190688, at *4 (S.D.N.Y. Oct. 15, 2019) (citation omitted); and social media sites, *see, e.g.*, *Gilbert v. Indeed, Inc.*, 20 Civ. 3826 (LJL), 2021 WL 169111, *26–27 (S.D.N.Y. Jan. 19, 2021) (LinkedIn); *Katiroll Co. v. Kati Roll and Platters, Inc.*, 10 Civ. 1703 (LTS), 2010 WL 2911621, at *4–5 (S.D.N.Y. July 9, 2010) (Facebook).

unless some degree of commercial activity occurred in New York."); *Freeplay Music, Inc. v. Cox Radio, Inc.*, No. 04 Civ. 5238 (GEL), 2005 WL 1500896, at *7 (S.D.N.Y. June 23, 2005) ("It stretches the meaning of 'transacting business' too far to subject defendants to personal jurisdiction in any state merely for operating a website, however commercial in nature, that is capable of reaching customers in that state, without some evidence or allegation that commercial activity in that state actually occurred or was actively sought."); *Rosenberg v. PK Graphics*, No. 03 Civ. 6655 (NRB), 2004 WL 1057621, at *2 (S.D.N.Y. May 10, 2004) (no jurisdiction under § 302(a)(1) because, "in marked contrast to nearly all cases finding jurisdiction, defendants' website does not even allow visitors to complete a purchase by paying online," and plaintiff did not identify a single specific transaction with a New York customer).

Here, Plaintiff alleges that Defendant's website enables the exchange of information between Defendant and New Yorkers; that it has a chat function and a contact form through which customers can submit their personal information and request more information from Defendant; and that Defendant's website links to its social media sites. *See* Compl. ¶¶ 11–17. It also claims that Defendant sells its "investment services *via the site to customers in New York*." *Id.* ¶ 12 (emphasis added). Plaintiff does not, however, explain how a New York customer might buy Defendant's services directly on the website. And review of the website, in fact, does not reveal such functionality. Thus, on the present allegations and record, Defendant's website falls short of being "highly interactive"; it is instead a typical "middle ground" site. As a result, the publication of the infringing "Blockchange" mark on Defendant's website alone is insufficient to support personal jurisdiction under New York law.[6]

---

[6] Plaintiff relies on *South Dakota v. Wayfair, Inc.*, 138 S. Ct. 2080 (2018), to argue that the mere existence of such a website, without more, establishes personal jurisdiction over Defendant

However, the Complaint alleges more than the mere availability of purchases on Defendant's website; it also alleges that Defendant *has sold* its services to New Yorkers on at least one occasion. *See* Compl. ¶ 12 ("Defendant knowingly and repeatedly sells its investment services via the site to customers in New York[.]"). To be sure, Plaintiff offers only a single, unelaborated allegation on this point; and its Complaint and supporting exhibits do not identify any specific transactions with New Yorkers. Defendant, for its part, denies a wide variety of business contacts with New York. *See* Caroline Eyre Decl. ¶ 5 (denying, *inter alia*, doing business in New York, soliciting business in New York, having agents or employees in New York, and maintaining any office or property in New York). Most pertinently, Defendant denies that it "buy[s] or sell[s] any assets in New York." *Id.* However, that denial is vague—it is unclear whether such "assets" encompass Defendant's online SaaS "tool," so as to deny any sales of its services to New York customers, or whether the term "assets" is meant to artfully refer to some narrower set of goods or tangible items. Defendant does not elaborate on this issue in its declarations or motion papers, and has not elsewhere contradicted Plaintiff's allegation that it sells services to New York customers.

The Court thus cannot reliably determine if it has personal jurisdiction over Defendant based on Defendant's website and any potential sales to New Yorkers. Plaintiff has established that Defendant operates a somewhat interactive website, and has alleged—though thinly—that

---

because the Supreme Court there "recognized the burgeoning significance of internet contacts." Pl. Mem. at 8. That case is far afield. First, it addressed Commerce Clause limits on state tax authority, not personal jurisdiction (let alone CPLR § 302(a)(1)). *Wayfair*, 138 S. Ct. at 2092. Second, the state law at issue authorized a state's regulation of foreign retailers who sold more than $100,000 worth of goods or services, or engaged in at least 200 transactions, in the state each year. *Id.* at 2089. It said nothing about personal jurisdiction over defendants based solely on the maintenance of a website, who may or may not have made *any* sales into the state at issue. It is, in short, irrelevant to this case.

Defendant has sold its services, under an allegedly infringing name, to New York customers. If both were established, the Court would almost certainly have personal jurisdiction over Defendant as to the claims in this case. *See, e.g.*, *Two's Co.*, 2014 WL 903035, at *5 ("The combination of the semi-interactive website . . . and the actual sale of products to New York . . . satisfies the 'transacting business' prong of New York's long-arm statute.").[7] Defendant, on the other hand, has denied selling any "assets" in New York; and Plaintiff has failed to identify any specific transactions supporting its claim of New York sales. *See, e.g.*, Compl. ¶¶ 3, 9, 12, 32. Although it seems possible that Defendant—which describes its business as selling a financial-services tool to SEC-regulated financial institutions—has sold its services to at least one New York customer (including after initiating contact through Defendant's website), the Court cannot so conclude at this stage of the litigation. *See, e.g.*, *In re Terrorist Attacks*, 714 F.3d at 673 (court "will not draw argumentative inferences in the plaintiff's favor"). Without doing so, the Court cannot determine whether the exercise of personal jurisdiction over Defendant, based on the nature of its website, would be appropriate under CPLR § 302(a)(1). *See, e.g.*, *Am. Girl, LLC*, 2021 WL 1699928, at *6 ("[S]imply operating a website, absent more, is insufficient to establish that Defendants 'transact business' in New York within the meaning of CPLR § 302(a)(1)[.]" (collecting cases)).

Accordingly, the Court authorizes limited jurisdictional discovery to establish whether, and to what extent, Defendant has sold its services to New York customers through its website or otherwise. Without more support for the allegation that Defendant transacts business with New

---

[7] CPLR § 302(a)(1) requires not only that a defendant transact business in the state, but that plaintiff's claims "arise from" that transaction. *See, e.g.*, *Sole Resort*, 450 F.3d at 103. Here, Plaintiff's claims would plainly "arise from" any sales of services under the allegedly infringing "Blockchange" mark to customers in New York. *See, e.g.*, *Alpha Int'l, Inc. v. T-Reproductions, Inc.*, No. 02 Civ. 9586 (SAS), 2003 WL 21511957, at *3 (S.D.N.Y. July 1, 2013) (finding personal jurisdiction where defendant sold "at least one accused product to a New York resident through its website").

York customers, and given the Complaint's sparse allegations to that effect, the Court cannot exercise personal jurisdiction over Defendant based solely on its display of the "Blockchange" mark on its website. However, if discovery reveals such transactions, the propriety of personal jurisdiction would be obvious; in that event, the Court expects and encourages Defendant to concede the existence of personal jurisdiction under CPLR § 302(a)(1) in this District.

### B. Defendant's Relationship with Gemini

The parties' dispute over the nature and implications of Defendant's partnership with Gemini also presents an issue pertinent to the Court's jurisdiction over Defendant. Defendant does not deny that Gemini is a New York company; it instead contests whether the relationship between it and Gemini amounts to the "transaction of business" under CPLR § 302(a)(1), given its claim that there is no "contract" between the two, and, if so, whether Plaintiff's claims "arise from" such a transaction. *See* Def. Mem. at 6–7. On this point, too, the record is sufficiently hazy as to make jurisdictional discovery appropriate.

A foreign entity's entering into a contract with a New York business may amount to "transacting business" under CPLR § 302(a)(1), but the "mere existence of a contract with a New York corporation is not sufficient to constitute the transaction of business." *Aquiline Cap. Partners LLC v. FinArch LLC*, 861 F. Supp. 2d 378, 387 (S.D.N.Y. 2012) (citation omitted). Rather,

> the Second Circuit has stated that the factors to be considered in determining whether an out-of-state defendant transacts business in New York include:
>
> > (i) whether the defendant has an on-going contractual relationship with a New York corporation; (ii) whether [a] contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) what the choice-of-law clause is in any such contract; and (iv) whether the contract requires . . . payments into the forum state or subjects [a party] to supervision by [a] corporation in the forum state.

16

*Shamoun v. Mushlin*, No. 12 Civ. 3541 (AJN), 2014 WL 12776779, at *7 (S.D.N.Y. Mar. 26, 2014) (quoting *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22–23 (2d Cir. 2004)). This list is not exhaustive or exclusive, and the Court "must look at the totality of the circumstances concerning the party's interactions with, and activities within, the state." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 787 (2d Cir. 1999).

Here, as discussed, the parties' characterizations of the relationship between Defendant and Gemini are far apart. Plaintiff points to press releases describing that relationship as a "partnership" offering a "one-stop shop" for customers, and claiming that "Gemini is the perfect partner for Blockchange to offer digital asset management capabilities to [Registered Investment Advisors]." Compl., Exs. 7, 9. Defendant, on the other hand, maintains that it uses Gemini's platform, without any formal contract, solely to serve the needs of one of its non-New York based customers, and that Plaintiff's infringement claims therefore do not "arise from" its and Gemini's relationship. *Compare* Pl. Mem. at 10–11, *with* Def. Mem. at 7.[8] The Court cannot, on the present record, reliably determine which party's account is the more accurate.

---

[8] Plaintiff seizes on Defendant's description of itself as a "customer" of Gemini's in Defendant's opening brief, arguing that this effectively concedes a "transaction" between Defendant and Gemini under CPLR § 302(a)(1). *See* Pl. Mem. at 9. It is unclear, however, what exactly that establishes; the fact that Defendant bought services from a New York corporation, even if it showed that Defendant "transacted business" here, does not mean that any infringement action Plaintiff might bring would "arise from" that transaction. Plaintiff's assumption that such is the case merely because Defendant "prominently display[s]" its name on the sites involving Gemini is incorrect for the reasons already given with respect to the mere display of an allegedly infringing mark on a website. Although a contract leading to the sale or supply of infringing products into New York can suffice to establish personal jurisdiction under CPLR § 302(a)(1), *see, e.g.*, *Citigroup*, 97 F. Supp. at 566; *Editorial Musical Latino Americana, S.A. v. Mar Intern. Recs., Inc.*, 829 F. Supp. 62, 65 (S.D.N.Y. 1993), Plaintiff has not identified any authority for the notion that a cause of action for trademark infringement "arises from" *any* contract that a defendant happens to have with a New York company, *see, e.g.*, *Alibaba Grp.*, 2018 WL 2022626, at *5 ("[Plaintiff] fails to cite a single case in which a court has concluded that an agreement with a third-party web-hosting company in New York bears an articulable nexus to a trademark infringement claim involving a website.")

As a result, the Court also authorizes limited jurisdictional discovery to allow the parties to clarify the following: (1) whether there is a contract between Gemini and Defendant; (2) if so, where it was negotiated and executed and what choice of law provision it may have; (3) how long the parties' relationship has lasted and is expected to last; (4) whether either company paid, pays, supervised, or supervises the other; and (5) whether either company has made sales to New York customers under the allegedly infringing "Blockchange" mark.

## CONCLUSION

For the foregoing reasons, the Court authorizes limited jurisdictional discovery, consistent with this decision, aimed at determining (1) whether Defendant has transacted business in New York under the allegedly infringing "Blockchange" mark; (2) the nature of Defendant and Gemini's relationship; and (3) whether that relationship has any relation to the transaction of business under the infringing name in New York.  In connection therewith, the Court authorizes document discovery and no more than two Rule 30(b)(6) depositions of Defendant.  All such discovery must be completed by September 16, 2021.

To be clear, the fundamental issue is whether Defendant, either on its own through its website, or through a partnership with Gemini, has sold its services under the allegedly infringing "Blockchange" mark to customers in New York.  Absent such evidence, the Court expects to dismiss Plaintiff's claims for lack of personal jurisdiction; if such evidence is adduced through discovery, the Court expects to deny Defendant's motion to dismiss under Rule 12(b)(2).  Given these clear guideposts, the Court encourages the parties, after discovery, to confer as to whether further motion practice on this point is necessary, or whether—as to the limited issue of personal jurisdiction—the record is clear enough to obviate such a need.

The parties are directed to complete jurisdictional discovery by September 16, 2021. By September 23, 2021, Plaintiff is to file a letter on the docket of this case stating whether it intends to continue pursuing this action in this District or consents to a dismissal without prejudice for lack of personal jurisdiction. If it continues to pursue this action in this District, Defendant may renew its motion to dismiss, based on lack of personal jurisdiction or any other grounds, and consistent with this opinion, by October 7, 2021. Plaintiff's opposition to that motion is due by October 21, 2021. Defendant's reply is due by October 28, 2021.

The Court accordingly denies Defendant's motion to dismiss, without prejudice to its right to renew that motion upon the close of jurisdictional discovery.

The Clerk of Court is respectfully directed to terminate the motion pending at docket 11.

SO ORDERED.

                                                    *Paul A. Engelmayer*
                                             PAUL A. ENGELMAYER
                                             United States District Judge

Dated: July 22, 2021
       New York, New York