UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BLOCKCHANGE VENTURES I GP, LLC,

                                    Plaintiff,

                    -v-

BLOCKCHANGE, INC.,

                                    Defendant.

---

21 Civ. 891 (PAE)

OPINION &
ORDER

---

PAUL A. ENGELMAYER, District Judge:

Blockchange Ventures I GP, LLC ("Plaintiff"), a New York company, has sued

Blockchange, Inc. ("Defendant"), a California company, alleging trademark infringement,

trademark dilution, and unfair competition under the Lanham Act; common law trademark

infringement and unfair competition; deceptive acts and practices in violation of New York

General Business Law ("GBL") §§ 349 and 350; and trademark dilution under GBL § 360-L.

Pending now is Defendant's motion to dismiss the complaint under Federal Rule of Civil

Procedure 12(b)(6), for failure to state a claim, and, in the alternative, to stay the action pending

the determination of the parties' proceeding before the Trademark Trial and Appeal Board

("TTAB").  For the following reasons, the Court grants the motion to dismiss as to Count Two,

trademark dilution under the Lanham Act, and Count Six, deceptive acts and practices in

violation of GBL §§ 349 and 350, but denies it as to Counts One, Three, Four, Five, and Seven,

which claim trademark infringement and unfair competition, each under both the Lanham Act

and the common law, and trademark dilution under GBL § 360-L.  The Court also denies

Defendant's motion to stay.

## I.     Background

### A.     Factual Background[1]

#### 1.     The Parties

Plaintiff, based in New York, is "engaged in the provision of venture capital, development capital, private equity, investment funding and wealth management exclusively in the field of digital assets." Compl. ¶ 5. The Complaint characterizes Defendant, a California corporation with its headquarters in San Jose, California, as dealing in "investment services and wealth management exclusively in the field of digital assets." *Id.* ¶ 8; *see also id.*, Ex. 2 ("Digital Asset Management for Investment Advisors . . . [Defendant] is the digital asset investing platform for professional wealth managers[.]"). Defendant denies that it is an investor. It terms itself a software-as-a-service ("SaaS") provider for "SEC-regulated registered investment advisors." Dkt. 12 ("Bradford Decl."), Ex. D ¶ 3. It states that it "is in the business of providing real-time, integrated business management intelligence by combining information from various databases in an easy-to-understand interface." Dkt. 13 ("Def. Mem.") at 3.

#### 2.     The Trademark Dispute

The Complaint alleges that Plaintiff has provided its services under the name "Blockchange" since at least 2017. Compl. ¶ 7; *see also id.*, Ex. 1 ("Registration"). On February 12, 2019, Plaintiff received a trademark in the mark "Blockchange" from the U.S. Patent and Trademark Office ("USPTO"). *See* Registration at 1. The trademark was issued

---

[1] These facts are drawn from the Complaint and the exhibits attached thereto. Dkt. 1 ("Compl."). For the purpose of resolving the motion to dismiss, the Court assumes all well-pled facts to be true and draws all reasonable inferences in favor of the plaintiff. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

under the registration number 5,676,113 in International Class 36, for the provision of "venture capital, development capital, private equity and investment funding." *Id.*

Defendant also operates its business under the name "Blockchange." *See* Compl. ¶ 11. It applied for a trademark in that name, but in September 2019, the USPTO rejected its two applications for the mark, citing the "likelihood of confusion with the mark BLOCKCHANGE in U.S. Registration No. 5676113," *i.e.*, the likelihood of confusion with Plaintiff's mark. *Id.*, Ex. 10 at 3; *see also* Compl. ¶ 30. On June 7, 2019, Plaintiff, through counsel, emailed Defendant asking that Defendant cease and desist using the "Blockchange" mark. Compl. ¶ 38. Defendant refused and continued to use the mark. *Id.* In August 2020, Plaintiff renewed its cease-and-desist demand, but Defendant again refused. *Id.* ¶ 39.

The Complaint alleges that the Blockchange mark is "integral to" and "synonymous with [Plaintiff's] brand," and that the mark distinguishes Plaintiff's services from others. *Id.* ¶¶ 33–34. The Complaint further alleges that Defendant's use of the Blockchange mark has caused consumer confusion and diluted Plaintiff's mark. *Id.* ¶ 31. Such confusion is particularly likely because, according to the Complaint, both Plaintiff and Defendant "operate in the same channels of trade" and "share the same or similar customers." *Id.* ¶ 35. Unless Defendant is enjoined, the Complaint alleges, Defendant's use of the "Blockchange" mark will continue to injure Plaintiff and the public, including by continuing to cause consumer confusion. *Id.* ¶¶ 36, 40.

**B.    Procedural History**

On August 25, 2020, Plaintiff first filed suit in this District against Defendant. *See* Bradford Decl., Ex. B. On January 29, 2021, Judge Hellerstein, to whom the initial action was assigned, granted Defendant's motion to dismiss for lack of personal jurisdiction, insufficient service, and lack of venue. *Id.*, Ex. A.

On February 1, 2021, Plaintiff commenced this action. *See* Dkt. 1 ("Compl."). On February 25, 2021, Defendant filed a motion to dismiss, including based on a lack of personal jurisdiction, Dkt. 11, and a memorandum in support, Dkt. 13 ("Def. Mem."). On March 17, 2021, Plaintiff opposed Defendant's motion. Dkt. 15 ("Pl. Mem."). On April 1, 2021, Defendant replied. Dkt. 16 ("Def. Reply").

On July 22, 2021, the Court directed the parties to engage in limited jurisdictional discovery regarding Defendant's New York contacts. Dkt. 17. On August 13, 2021, Defendant conceded the existence of personal jurisdiction due to its recent acquisition of a customer in New York, requested the suspension of jurisdictional discovery, and renewed its motion to dismiss under Rule 12(b)(6). Dkt. 18. The same day, Plaintiff filed a letter requesting responses to the discovery requests it had already served. Dkt. 19. On August 16, 2021, the Court suspended jurisdictional discovery and revived Defendant's motion to dismiss. Dkt. 20. On August 26, 2021, the Court held an initial conference and issued a civil case management plan. *See* Dkts. 20, 24.

Contemporaneously, the parties have litigated before the TTAB. Defendant represents that, on September 22, 2020, it commenced a TTAB proceeding against Plaintiff, seeking cancellation of Plaintiff's mark. Def. Mem. at 1. On December 1, 2020, the TTAB stayed that case pending resolution of the motion to dismiss before Judge Hellerstein. *Id.* at 2. On January 29, 2021, the day Judge Hellerstein granted that motion, Defendant moved to resume the stayed TTAB proceeding. *Id.* On February 9, 2021, eight days after it filed this action, Plaintiff moved to suspend the TTAB proceeding. *Id.* Here, Defendant seeks, in the alternative to dismissal, a stay of this case pending an outcome before the TTAB. *See id.* at 13–15.

4

## II.    Legal Standard for a Motion to Dismiss under Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  By contrast, a complaint will not "suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotation marks and alterations omitted).  Such factual enhancement is necessary to "nudge[] [a] claim[] across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Although this standard "does not impose a probability requirement at the pleading stage," it does require a complaint to plead "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the plaintiff's claims.  *Id.* at 556.  Where a complaint fails to do so, "[t]his basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the [C]ourt." *Id.* at 558 (ellipsis omitted) (quoting 5 Wright & Miller, Federal Practice and Procedure § 1216).  Otherwise, "the threat of discovery expense will push cost-conscious defendants to settle even anemic cases before reaching those proceedings." *Id.* at 559.  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the [Court] to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief'" and must be dismissed. *Iqbal*, 556 U.S. at 679 (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, although the Court must accept as true all well-pled factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor, *Steginsky v. Xcelera Inc.*,

741 F.3d 365, 368 (2d Cir. 2014), that tenet "is inapplicable to legal conclusions," *Iqbal*,

556 U.S. at 678.

## III.    Discussion

The Court first analyzes the five counts for which the Complaint states a claim: those

claiming trademark infringement under the Lanham Act and New York law; then those claiming

unfair competition under the Lanham Act and New York law; and then that claiming dilution

under GBL § 360-L.  The Court then analyzes the two counts it is dismissing: for trademark

dilution under the Lanham Act, and deceptive acts and practices under GBL §§ 349 and 350.

### A.    Counts One and Four: Trademark Infringement

#### 1.    Applicable Law

Plaintiff brings trademark infringement claims under the Section 32 of the Lanham Act

and New York common law.  Under Section 32, the owner of a registered mark may seek "civil

damages against a party who uses the mark without the owner's consent in a manner 'likely to

cause confusion, or to cause mistake, or to deceive.'"  *Louis Vuitton Malletier S.A. v. LY USA,*

*Inc.*, 472 F. App'x 19, 21 (2d Cir. 2012) (quoting 15 U.S.C. § 1114(1)(a)).  Section 32 claims are

analyzed under a familiar two-prong test, which "looks first to whether the plaintiff's mark is

entitled to protection, and second to whether the defendant's use of the mark is likely to cause

consumers confusion as to the origin or sponsorship of the defendant's goods."  *Tiffany (NJ) Inc.*

*v. eBay Inc.*, 600 F.3d 93, 102 (2d Cir. 2010) (quotation marks and citation omitted).  Because

the elements of trademark infringement under New York law mirror those of the Lanham Act,

the Court analyzes the two claims together.  *See Twentieth Century Fox Film Corp. v. Marvel*

*Enters.*, 220 F. Supp. 2d 289, 297–98 (S.D.N.Y. 2002); *Standard & Poor's Corp. v. Commodity*

*Exch., Inc.*, 683 F.2d 704, 708 (2d Cir. 1982).

2.      **Analysis**

Plaintiff's mark, "Blockchange," is protected by a valid trademark issued by the USPTO,

as Defendant concedes. *See* Def. Mem. at 3. Accordingly, the decisive issue is whether the

Complaint has adequately alleged that Defendant used its mark in a way likely to cause

consumer confusion. *See, e.g., U.S. Polo Ass'n v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515,

525–26 (S.D.N.Y. 2001), *aff'd*, 551 F. App'x 81 (2d Cir. 2013).

In assessing the likelihood of confusion, courts in this Circuit consider the

"*Polaroid* factors" articulated by Judge Friendly in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287

F.2d 492 (2d Cir. 1961). *See Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373, 384 (2d Cir.

2005); *see also W.W.W. Pharm. Co. v. Gillette Co.*, 984 F.2d 567, 572 (2d Cir. 1993) (applying

*Polaroid* test to reverse confusion claim); *Kelly-Brown v. Winfrey*, 717 F.3d 295, 307 (2d Cir.

2013) (discussing *Polaroid* factors).[2]  In resolving a motion to dismiss, however, it is

unnecessary to undertake that fact-intensive analysis. *See, e.g., Merck & Co. v. Mediplan Health

Consulting, Inc.*, 425 F. Supp. 2d 402, 412 (S.D.N.Y. 2006) (on 12(b)(6) motion, court "merely .

. . assess[es] the legal feasibility of the complaint, [and does not] assay the weight of the

evidence") (quoting *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998)). A complaint can

survive a motion to dismiss as long as it alleges, in general terms, that the defendant's infringing

conduct caused consumer confusion. *See, e.g., Merck*, 425 F. Supp. 2d at 412 (allegation that

"[p]urchasers and potential purchasers are likely to believe in error that [products] are approved

by or are distributed by or under the authorization or sponsorship of Merck" was sufficient to

---

[2] Those are: (1) the strength of the plaintiff's mark; (2) the degree of similarity between the
plaintiff's and the defendant's marks; (3) the competitive proximity of the products sold under
the marks; (4) the likelihood that the plaintiff will bridge the gap; (5) actual confusion; (6) the
defendant's good faith, or lack thereof, in adopting its mark; (7) the quality of the defendant's
product; and (8) the sophistication of the plaintiff's customers. *Time, Inc. v. Petersen Publ'g
Co.*, 173 F.3d 113, 117 (2d Cir. 1999); *see also Polaroid*, 287 F.2d at 495.

plead consumer confusion (ellipsis omitted)); *Fischer v. Forrest*, Nos. 14 Civ. 1304, 14 Civ.

1307 (PAE), 2015 WL 195822, at *10 (S.D.N.Y. Jan. 13, 2015).

Here, the Complaint adequately so pleads. It alleges that "[t]he ordinary consumer would

not and does not recognize any distinction between the services provided by [Plaintiff] and

Defendant," Compl. ¶ 28, and that the USPTO rejected Defendant's applications because it

concluded that Defendant's mark would create a likelihood of confusion with Plaintiff's, *id.* ¶ 30.

Moreover, it pleads, both Plaintiff's and Defendant's "brands of services share the same or

similar customers, increasing the likelihood of confusion" between the two. *Id.* ¶ 35. These

allegations are plausible in part because, as the Complaint alleges, the marks are identical, and

Defendant has infringed Plaintiff's mark on the Internet. *See id.* ¶¶ 11, 35. *See Lambda Elecs.*

*Corp. v. Lambda Tech., Inc.*, 515 F. Supp. 915, 925 (S.D.N.Y. 1981) (identity of marks

persuasive in determining likelihood of confusion); *Savin Corp. v. Savin Grp.*, 391 F.3d 439, 458

(2d Cir. 2004) (where two names were identical, slight physical difference between their

presentation was "inconsequential," especially because, on the Internet, "subtle differences . . .

are of even less significance," where consumer's search is apt to be for the correct website).

These allegations suffice to state a trademark infringement claim under Section 32 and New

York common law.[3]

### B.    Count Three: Unfair Competition Under Lanham Act § 43

#### 1.    Applicable Law

"Section 43(a) is a broad federal unfair competition provision." *Chambers v. Time*

*Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002). It creates a federal cause of action against:

---

[3] Defendant argues that "Plaintiff cannot allege likely or actual confusion except in the most
conclusory fashion . . . and . . . alleges absolutely no specific instances of actual confusion."
Def. Mem. at 10. At the motion to dismiss stage, however, that showing is not necessary,
provided that the Complaint adequately pleads a likelihood of confusion.

> Any person who, on or in connection with any goods or services, or any container
> for goods, uses in commerce any word, term, name, symbol, or device, or any
> combination thereof, or any false designation of origin, false or misleading
> description of fact, or false or misleading representation of fact, which—
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the
> affiliation, connection, or association of such person with another person, or as to
> the origin, sponsorship, or approval of his or her goods, services, or commercial
> activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature,
> characteristics, qualities, or geographic origin of his or her or another person's
> goods, services, or commercial activities . . .

15 U.S.C. § 1125(a)(1).  To plead a violation of this statute, a complaint must allege that (1)

goods or services are involved; (2) interstate commerce is affected; and (3) a false designation of

origin or a false description or representation with respect to those goods or services in

commerce that is likely to cause confusion, mistake, deception, or is a misrepresentation.  *See*

*Pulse Creations, Inc. v. Vesture Grp., Inc.*, 154 F. Supp. 3d 48, 56 (S.D.N.Y. 2015).

### 2.    Analysis

The Complaint plausibly alleges all required elements under § 43(a).  It does so by

alleging that Plaintiff "has been providing its services under the Blockchange mark" since at

least 2017, Compl. ¶ 7; that interstate commerce is affected by Defendant's use of the mark, *id.*

¶¶ 32, 35; and that Defendant falsely represents its services by using Plaintiff's mark, *id.* ¶¶ 35,

59, causing a likelihood of confusion, *e.g.*, *id.* ¶¶ 30, 35, 60.[4]  *See, e.g.*, *Pulse Creations, Inc.*,

154 F. Supp. 3d at 57 (sustaining claim which satisfactorily alleged that defendant sold goods

with "a false designation . . . that would suggest that Plaintiff produced and sold those goods").

---

[4] Defendant reprises its observation that Plaintiff has not proven likely or actual confusion, Def.
Mem. at 10, but, as with the trademark infringement claims, such proof is not needed at the
pleading stage.  *See supra* n.3.

### C.     Count Five: Unfair Competition Under New York Common Law

#### 1.     Applicable Law

To prevail on a claim of unfair competition under New York law, a plaintiff must show (1) likelihood of confusion and (2) bad faith by the defendant. *See Burberry Ltd. & Burberry USA v. Designers Imps., Inc.*, No. 07 Civ. 3997 (PAC), 2010 WL 199906, at *8 (S.D.N.Y. Jan. 19, 2010); *Forschner Grp., Inc. v. Arrow Trading Co.*, 124 F.3d 402, 408 (2d Cir. 1997) ("[T]he essence of unfair competition is the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origin of the goods." (internal quotation omitted)).

#### 2.     Analysis

The Complaint states such a claim.  As to the first factor, as noted, it adequately alleges the likelihood of confusion.  As to the second, Defendant's bad faith is also appropriately inferred from the Complaint's allegations, including that Defendant used its Blockchange mark in commerce despite having been twice rejected by the USPTO in its efforts to trademark the mark because of the likelihood of confusion with Plaintiff's mark; that it has placed prominent enlarged images of the term "Blockchange" on its website; that it continued to use the mark after Plaintiff sent a cease-and-desist letter in June 2019 and after an August 2020 email from Plaintiff and a videoconference call between the parties. *See* Compl. ¶¶ 30, 37–39.  The allegations of Defendant's knowledge of the alleged infringement and persistence thereafter in using the mark support a claim of bad faith. *See, e.g., Int'l Diamond Imps., Inc. v. Oriental Gemco (N.Y.), Inc.*, 64 F. Supp. 3d 494, 525 (S.D.N.Y. 2014) (complaint adequately pled bad faith where plaintiffs alleged that defendants knowingly used plaintiffs' trade dress to sell knock-off jewelry); *Fischer*, 2015 WL 195822, at *12 (complaint adequately pled bad faith where plaintiff alleged, *inter alia*, an intentional copy of his protected mark to sell a competing product and defendant's persistence

after receiving a cease-and-desist letter); *Gucci Am., Inc. v. Guess?, Inc.*, 868 F. Supp. 2d 207, 240 (S.D.N.Y. 2012) ("Actual or constructive knowledge of the senior user's mark may be indicative of bad faith."). The Complaint therefore states a claim of common law unfair competition under New York law.

### D.    Count Seven: GBL Dilution

#### 1.    Applicable Law

Under GBL § 360-L, a plaintiff may bring suit "where [the] public knows that the defendant is not connected to or sponsored by the plaintiff, but the ability of [the plaintiff's] mark to serve as a unique identifier of the plaintiff's goods or services is weakened because the relevant public now also associates that designation with a new and different source." *Sports Auth. v. Prime Hospitality Corp.*, 89 F.3d 955, 965–66 (2d Cir. 1996) (internal quotation omitted).[5]

"[T]o establish a dilution claim, two elements must be shown: (1) ownership of a distinctive mark, and (2) a likelihood of dilution." *Hormel Foods Corp. v. Jim Henson Prods. Inc.*, 73 F.3d 497, 506 (2d Cir. 1996); *see also Ritani, LLC v. Aghjayan*, 880 F. Supp. 2d 425, 449 (S.D.N.Y. 2012). The first element "refers to 'the strength of the mark for infringement purposes.'" *Tri-Star Pictures, Inc. v. Unger*, 14 F. Supp. 2d 339, 363 (S.D.N.Y. 1998) (quoting *Mead Data Central, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 875 F.2d 1026, 1030 (2d Cir. 1989)). The mark's distinctiveness may be established through secondary meaning, if the mark "has become so associated in the mind of the public with that entity . . . or its product that it identifies" those goods or services and distinguishes them from those sold by others. *Eliya, Inc.*

---

[5] The Second Circuit's discussion in *Sports Authority* concerned a predecessor provision, GBL § 368-d, which is identically worded to today's § 360-L. *See Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*, 887 F. Supp. 2d 519, 543 (S.D.N.Y. 2012).

*v. Kohl's Dep't Stores*, No. 06 Civ. 196 (GEL), 2006 WL 2645196, at *6 (S.D.N.Y. Sept. 13, 2006) (alteration in original) (quoting *Mead*, 875 F.2d at 1030). The second element "pertains to 'the blurring of a trademark's product identification or the tarnishment of the affirmative associations a mark has come to convey.'" *Tri-Star Pictures, Inc.*, 14 F. Supp. 2d at 363. Fame is not required under the statute, which can apply even if the parties are not in competition and there is no confusion about the source of the goods or services. N.Y. Gen. Bus. Law § 360-L; *see Schutte Bagclosures Inc. v. Kwik Lok Corp.*, 193 F. Supp. 3d 245, 284–85 (S.D.N.Y. 2016), *aff'd*, 699 F. App'x 93 (2d Cir. 2017). However, a dilution claim is not cognizable under the statute "unless the marks at issue are substantially similar." *A.V.E.L.A., Inc. v. Estate of Marilyn Monroe, LLC*, 131 F. Supp. 3d 196, 212 (S.D.N.Y. 2015).

### 2.    Analysis

The Complaint states a dilution claim under GBL § 360-L. It alleges that the mark "has become synonymous with [Plaintiff's] brand and distinguishes its services" from those sold by others. Compl. ¶ 34. It further alleges that Defendant's unauthorized use of the Blockchange mark "dilutes or is likely to dilute" the mark's "distinctive quality . . . and to lessen the capacity" of the mark "to identify and distinguish" Plaintiff's service. *Id.* ¶ 89. The Complaint further plausibly alleges that the parties operate in the same or similar field and use identical marks, enhancing the likelihood of dilution. *Id.* ¶¶ 9, 35. On the basis of these allegations, it is plausible that Defendant's use of the mark "rais[es] the possibility that the mark will lose its ability to serve as a unique identifier of [Plaintiff's] product." *Deere & Co. v. MTD Products, Inc.*, 41 F.3d 39, 43 (2d Cir. 1994); *see also Fireman's Ass'n of State of New York v. French Am. Sch. of New York*, 839 N.Y.S.2d 238, 241–42 (2007) (sustaining claims on motion to dismiss where allegations included "facts indicating that [Defendant] is using the same distinctive mark to advertise in an overlapping geographic area and on the Internet").

Defendant argues that Plaintiff has not adequately pled "the distinctiveness of its mark." Def. Mem. at 12. The Complaint pleads few facts supporting the asserted distinctiveness and fame of the Blockchange mark, *cf., e.g.*, Compl. ¶ 87, but enough are pled to survive at this early stage, *Kaplan, Inc. v. Yun*, 16 F. Supp. 3d 341, 352 (S.D.N.Y. 2014). These include Plaintiff's ownership of the Blockchange mark, the identical nature of the parties' marks, and the plausible allegation that Plaintiff's services are so associated with the mark that Defendant's use of it could harm Plaintiff's product identification and association.

### E.    Count Two: Trademark Dilution under Section 43(c) of the Lanham Act

#### 1.    Applicable Law

Section 43(c) of the Lanham Act provides that "the owner of a famous mark that is distinctive . . . shall be entitled to an injunction against another person who . . . commences use of a mark . . . in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury." 15 U.S.C. § 1125(c)(1). The owner of the famous mark may also be awarded monetary damages, attorneys' fees, and costs under 15 U.S.C. § 1117(a), if (1) the mark that is likely to cause dilution by blurring or tarnishment was first used in commerce by the party against whom the injunction is sought after October 6, 2006, and (2) the party against whom the injunction is sought willfully intended to trade on the recognition of the famous mark or willfully intended to harm the reputation of the famous mark. 15 U.S.C. § 1125(c)(5). *See, e.g., Patrizzi v. Bourne in Time, Inc.*, No. 11 Civ. 2386 (PAE), 2012 WL 4833344, at *7 (S.D.N.Y. Oct. 11, 2012).

Critical here is the element of a "famous mark." Such is defined in § 1125(c)(2)(A) as

one which is "widely recognized by the general consuming public of the United States."[6] 15

U.S.C. § 1125(c)(2)(A). To qualify as a famous mark, a mark generally must "enjoy such broad

renown so as to at least approach (if not attain) the status of 'household names.'" *See Schutte*,

193 F. Supp. 3d at 284 (citing *Friesland Brands, B.V. v. Vietnam Nat'l Milk Co.*, 228 F. Supp. 2d

399, 412 (S.D.N.Y. 2002)); *see also Luv N' Care, Ltd. v. Regent Baby Prods. Corp.*, 841 F.

Supp. 2d 753, 757–58 (S.D.N.Y. 2012) (citing Budweiser beer, Camel cigarettes, and Barbie

dolls as examples of household names); *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588

F.3d 97, 105 (2d Cir. 2009) (noting that "the requirement that the mark be 'famous' and

'distinctive' significantly limits the pool of marks that may receive dilution protection"). "Niche

fame" in a particular market sector or group of consumers is generally insufficient to prove a

claim of trademark dilution. *Schutte*, 193 F. Supp. 3d at 283; *Boarding Sch. Rev., LLC v. Delta

Career Educ. Corp.*, No. 11 Civ. 8921 (DAB), 2013 WL 6670584, at *6–7 (S.D.N.Y. Mar. 29,

2013); *Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*, 887 F. Supp. 2d 519, 540–41 (S.D.N.Y.

2012).

On a motion to dismiss, the Complaint's dilution claim must be facially plausible. *See

Heller Inc. v. Design Within Reach, Inc.*, No. 09 Civ. 1909 (JGK), 2009 WL 2486054, at *4

(S.D.N.Y. Aug. 14, 2009). The Second Circuit has counseled that, "where it is possible for a

---

[6] "In determining whether a mark possesses the requisite degree of recognition, the court may consider all relevant factors, including the following: (i) [t]he duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties[;] (ii) [t]he amount, volume, and geographic extent of sales of goods or services offered under the mark[;] (iii) [t]he extent of actual recognition of the mark[; and] (iv) [w]hether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register." 15 U.S.C. § 1125(c)(2)(A).

14

district court to determine in the first instance the issue of the famousness of the senior mark, the court would be well-advised to do so." *Savin*, 391 F.3d at 450.

### 2.    Analysis

The Complaint does not state a claim under Section 43(c) because it does not plead facts plausibly alleging that "Blockchange" is a famous mark that is "widely recognized by the general consuming public of the United States." 15 U.S.C. § 1125(c)(2)(A). Although Blockchange is a registered mark—one of the statutory factors—the Complaint does not allege sufficient facts regarding the remainder of the factors, namely, the advertising or publicity of Plaintiff's mark; the amount, volume, and geographic reach of Plaintiff's services; or the extent of "actual recognition" of the mark. Instead, the Complaint only conclusorily states that Blockchange is distinctive and famous within the meaning of Section 43(c)[.]" Compl. ¶ 51.

At best, the Complaint pleads fame within the niche area of digital assets. *See id.* ¶ 9 ("The field of digital assets is a new, specialized area of investment that both [Plaintiff] and Defendant inhabit."). But that does not satisfy the statutory standard.[7] And the Complaint's allegations pale in contrast to cases finding a famous mark sufficiently pled. *See A.V.E.L.A.*, 131 F. Supp. 3d at 216 (complaint adequately pled that marks derived from the name of Marilyn Monroe were famous where it alleged that the marks were used continuously and pervasively;

---

[7] *See Luv N' Care*, 841 F. Supp. 2d at 757–59 (where complaint did not plead facts regarding advertising, publicity, or registration, and only generally pled the revenue from goods sold under this mark, it at best pled "fame among baby product consumers," which was insufficient to state a claim); *Heller*, 2009 WL 2486054, at *4 (complaint failed to state claim where it pled only "that its chair is known to a niche population," and "failed to include any other factual allegations that would make a claim of 'fame' plausible," including "advertising budget or the strength of its consumer recognition in the general population"); *Glob. Brand Holdings, LLC v. Church & Dwight Co.*, No. 17 Civ. 6571 (KBF), 2017 WL 6515419, at *5–6 (S.D.N.Y. Dec. 19, 2017) (allegations that plaintiff's goods were sold nationwide and online "through large, well-known retailers, and that it ha[d] spent millions of dollars to create consumer recognition" were inadequate to plead statutory standard).

15

that large amounts of money and significant effort were expended promoting and advertising the marks; that there were significant sales of products bearing the marks nationally and internationally; that the marks had obtained secondary meaning; and that the marks were registered); *Nat'l Hockey League v. Hockey Cup LLC*, No. 18 Civ. 6587 (DLC), 2019 WL 130576, at *8 (S.D.N.Y. Jan. 8, 2019) (sustaining claims where the National Hockey League alleged that the Stanley Cup trophy was "enormously famous" and recognized as a highly celebrated sports trophy and cited news articles in support). Because the Complaint at best alleges niche fame, rather than household name status, for the term Blockchange, it fails to state a claim for federal trademark dilution.[8]

### F.    Count Six: GBL Deceptive Acts and Practices

#### 1.    Applicable Law

The Complaint also brings claims under GBL §§ 349 and 350 for deceptive trade practices. To state a claim under GBL § 349, "a plaintiff 'must prove three elements: first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act.'" *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 490 (2d Cir. 2014) (quoting *Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29 (2000)). A deceptive act alone does not suffice; it must have "a broader impact on consumers at large." *Int'l Diamond Imps.*, 64 F. Supp. 3d at 515 (quoting *Shapiro v. Berkshire Life Ins. Co.*, 212 F.3d 121, 126 (2d Cir. 2000)); *see also, e.g., Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995). It must "threaten the public interest, such as potential danger to public health or safety." *Int'l Diamond*

---

[8] In light of this deficiency, the Court has no occasion to consider whether the Complaint alleges the other elements of such a claim, including dilution and Defendant's intent.

16

*Imps.*, 64 F. Supp. 3d at 515; *see also id.* at 515 nn.132–33 (collecting cases).  "Claims for false

advertising under [GBL] § 350 are subject to the same standard." *RCA Trademark Mgmt. S.A.S.*

*v. VOXX Int'l Corp.*, No. 14 Civ. 6294 (LTS) (HBP), 2015 WL 5008762, at \*3 (S.D.N.Y. Aug.

24, 2015) (citing *Princeton Graphics Operating, L.P. v. NEC Home Electronics (U.S.A.), Inc.*,

732 F. Supp. 1258, 1267 (S.D.N.Y. 1990)).  The majority view in the Second Circuit is that

"trademark infringement claims are not cognizable under §§ 349 and 350 unless there is a

specific and substantial injury to the public interest over and above ordinary trademark

infringement or dilution." *Coach, Inc. v. Horizon Trading USA Inc.*, 908 F. Supp. 2d 426, 435

(S.D.N.Y. 2012) (cleaned up); *see also Medisim Ltd. v. BestMed LLC*, No. 10 Civ. 2463 (SAS),

2012 WL 1450420, at \*3 n.21 (S.D.N.Y. Apr. 23, 2012).

### 2.    Analysis

The Complaint does not state a claim under GBL §§ 349 and 350, because it does not

allege a "specific and substantial injury to the public interest" beyond trademark infringement or

dilution.  It generally alleges that "Defendant has engaged in consumer-oriented conduct that . . .

has resulted in injury to consumers in New York." Compl. ¶ 79.  But it does not allege any

injury besides the injury to Plaintiff, *see, e.g., id.* ¶¶ 79–80, 82, and confusion to the public, *id.* ¶

80.  But "confusion and deception of the consuming public is not distinct from the very harm that

trademark laws generally seek to redress," *Coach*, 908 F. Supp. 2d at 436 (cleaned up), whereas

the majority view of GBL §§ 349 and 350, which this Court follows, requires additional public

harm, which is not pled. *Cf., e.g., Fischer*, 2015 WL 195822, at \*13 (GBL §§ 349 and 350 claim

adequately pled where complaint alleged, *inter alia*, potential health problems from ingesting

tainted honey).

## IV.     Motion to Stay Pending TTAB Proceeding

As the alternative to dismissal, Defendant moves to stay this action pending the TTAB

proceeding.  That motion implicates the primary jurisdiction doctrine, which "guards against

premature judicial encroachment upon an agency's sphere of responsibility and expertise." *Goya*

*Foods, Inc. v. Tropicana Prods, Inc.*, 846 F.2d 848, 853 (2d Cir. 1988); *see Ellis v. Tribune*

*Television Co.*, 443 F.3d 71, 83 (2d Cir. 2006).  Considering such applications, courts in this

Circuit typically consider whether the question (1) falls within the conventional expertise of

judges, or, instead, matters within an agency's expertise; (2) "is particularly within the agency's

discretion"; (3) raises "substantial danger" of inconsistent rulings; and (4) has been the subject of

a prior application to the agency. *Ellis*, 443 F.3d at 82–83.  Courts must also "balance the

advantages of applying the doctrine against the potential costs" of doing so, given potential

"complications and delay in the administrative proceedings." *Id.* at 83 (quoting *Nat'l Commc'ns*

*Ass'n, Inc. v. AT&T Co.*, 46 F.3d 220, 223 (2d Cir. 1995)).

Such a case-specific evaluation is unnecessary, however, in suits involving trademark

infringement.  The Second Circuit has held that, in such cases, "the interest in prompt

adjudication far outweighs the value of having the views of the [USPTO]." *Goya Foods*, 846

F.2d at 853–54.  Plaintiff is entitled to a prompt resolution of its claim for infringement, and

delaying resolution "undercuts the purpose of declaratory relief." *Id.* at 854; *see also, e.g., RLP*

*Ventures LLC v. All Hands Instruction NFP*, No. 18 Civ. 3988 (RWS), 2019 WL 1316030, at *7

(S.D.N.Y. Mar. 22, 2019) (denying motion to stay because infringement was at issue in district

court); *Classic Liquor Importers, Ltd. v. Spirits Int'l B.V.*, 151 F. Supp. 3d 451, 459 (S.D.N.Y.

2015) (rejecting defendant's request that court not exercise jurisdiction as a possible abuse of

discretion under *Goya Foods* and because TTAB had already stayed proceedings in deference to

the litigation in question).  The Court therefore denies Defendant's motion to stay this action.

## CONCLUSION

For the foregoing reasons, the Court grants the motion to dismiss Counts Two and Six,[9] denies the motion to dismiss Counts One, Three, Four, Five, and Seven, and denies Defendant's motion to stay these proceedings pending the determination of the TTAB.

The Clerk of Court is respectfully directed to terminate the motion pending at docket number 11.

SO ORDERED.

*Paul A. Engelmayer*

_____
PAUL A. ENGELMAYER
United States District Judge

Dated: September 22, 2021
New York, New York

---

[9] Plaintiff has not sought leave to replead these claims in the event of dismissal and there is no basis on which to regard the deficiencies in these claims as reparable. The Court accordingly dismisses these claims with prejudice. *See, e.g.*, *Williams v. Citigroup Inc.*, 659 F.3d 208, 212 (2d Cir. 2011).